154 A.2d 893 (1959)
Maurice COYNE et al., Plaintiffs Below, Appellants,
v.
PARK & TILFORD DISTILLERS CORPORATION and Schenley Industries, Inc., both Delaware corporations, Defendants Below, Appellees.
Supreme Court of Delaware.
October 29, 1959.
H. James Conaway, Jr., of Morford, Young & Conaway, Wilmington, for appellants.
Aaron Finger, of Richards, Layton & Finger, Wilmington, for appellee Schenley Industries, Inc.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*894 SOUTHERLAND, Chief Justice.
This is a stockholders' attack on the legality of a corporate merger.
Prior to March 26, 1958, Schenley Industries, Inc., a Delaware corporation, owned 242,742 (more than 96%) of the 252,328.61 shares of Park & Tilford Distillers Corporation, another Delaware corporation. On that date Park was merged into Schenley by resolution of Schenley's board of directors, adopted pursuant to the power conferred by Section 253 of the General Corporation Law  the "short-merger" statute. 8 Del.C. § 253. In its original form, as enacted in 1937 (41 Del.L. c. 131), this statute (then 59A) permitted short mergers only if the subsidiary was wholly owned. By the amendment of 1957 its scope has been broadened to include cases where the parent's stock interest is 90% or more. As amended, the section now provides in part:
"(a) Any corporation organized or existing under the laws of this State, or under the laws of any other state or jurisdiction subject to the laws of the United States, if the laws of such other state or jurisdiction shall permit such a merger, owning at least 90 per centum of the outstanding shares of each class of the stock of any other corporation organized or existing under the laws of this State, or under the laws of any other state or jurisdiction subject to the laws of the United States, if the laws of such other state or jurisdiction shall permit such a merger, may file in the office of the Secretary of State a certificate of such ownership and merger in its name and under its corporate seal, signed by its president or a vice-president, and its secretary or treasurer, or assistant secretary or assistant treasurer, and setting forth a copy of the resolution of its board of directors to merge such other corporation or corporations and to assume all of its or their obligations, and the date of the adoption thereof; provided, however, that in case the parent corporation shall not own all the outstanding stock of the corporation to be merged, the resolution of the board of directors of the parent corporation shall state the terms and conditions of the merger, including the securities, cash or other consideration to be issued, paid or delivered by the parent corporation upon surrender of each share of the merged corporation not owned by the parent corporation."
The Board determined that $43 in cash should be the consideration to be paid by Schenley upon the surrender of each share of stock of Park.
Plaintiffs below, minority stockholders of Park, filed suit on April 21, 1958, to enjoin the consummation of the merger and to obtain a declaratory judgment that the merger was void. The Chancellor denied a motion for a temporary restraining order.
Both sides moved for summary judgment, the main issue between them being one of law. The Chancellor upheld the validity of the merger and granted the defendant's motion. Plaintiff stockholders appeal.
Two questions are raised:
I. Does Section 253 empower the parent corporation to pay the minority stockholders cash and thus eliminate their interest in the corporation?

II. If so, is the statute constitutional as to these stockholders?

*895 I.
The pertinent language of the statute requires the resolution of the board of directors to state the terms and conditions of the merger, "including the securities, cash or other consideration to be issued, paid or delivered" for the minority stock.
On its face, the statute supplies an affirmative answer to the first question. The language is very broad and cash is specifically mentioned.
Plaintiffs contend to the contrary. They say that Section 253 must be construed in the light of Section 251, 8 Del.C. § 251, which refers to the payment of cash for fractional shares, and that "cash" in Section 253 likewise refers only to cash distributed for fractional shares. They say that the law of Delaware never has permitted, and does not now permit, the payment of cash for whole shares surrendered in a merger and the consequent expulsion of a stockholder from the enterprise in which he has invested. Such an expulsion, say plaintiffs, is contrary to the settled policy of the law.
The argument to support this conclusion runs as follows:
Section 253 is not a grant of power to merge; it merely authorizes a short and simplified procedure to accomplish a merger in certain special cases. It is a mere procedural statute and confers no substantive rights. For authority to merge, and for authority to distribute securities or cash in a merger Section 251 (formerly Section 59) must be looked to. Since under that section cash may not be paid for stock surrendered in a merger, except for fractional shares, the apparently unrestricted language of Section 253  "securities, cash or other consideration" must be deemed to be limited by the language of Section 251. This is plaintiffs' argument.
Defendant does not seriously quarrel with plaintiffs' contention that, at least prior to 1941, Section 251 (then Section 59) did not permit the payment of cash for shares surrendered in a merger (or consolidation). This is because the statute has always provided in substance that the merger agreement must "state the manner of converting the shares of each of the constituent corporations into shares" of the resulting corporation.
We say "prior to 1941" because in that year Section 59 was amended to provide for conversion of the old shares into "shares or other securities" of the resulting corporation. 43 Del.L. c. 132. We note in passing that plaintiffs' policy argument respecting expulsion of the stockholder from the enterprise loses much of its force in the light of the 1941 amendment. As the Chancellor observed, it became possible for a merger to terminate a shareholder's stock interest by issuing redeemable bonds or similar monetary obligations. Nevertheless, the conferring in 1955 of express authority to pay cash for fractional shares (50 Del.L. c. 467), gives some support to plaintiffs' argument that under Section 251 cash cannot be paid for whole shares.
We shall assume without deciding, as the Chancellor did, that Section 251 does not authorize the payment of cash for shares (except fractional shares). The question is therefore reduced to this: Is Section 253 a mere procedural statute, as plaintiffs contend, or does it confer substantive rights in respect of the permissible terms of a merger agreement?
Plaintiffs' contention is bottomed upon certain comments of our Supreme Court in the case of Federal United Corp. v. Havender, 1940, 24 Del.Ch. 318, 11 A.2d 331, upon the purpose and effect of the "short-merger" statute of 1937 above referred to. We say "comments" because the act of 1937 was not directly involved in the Havender case. The case concerned a merger of a wholly-owned subsidiary into the parent accomplished in 1936 under the provisions of Section 59 (now Section 251). No new shares were issued in respect to the shares of the subsidiary. The Chancellor had held that such a merger could not be accomplished *896 under Section 59 because of the requirement of that Section that the merger agreement provide for "converting the shares of each of the constituent corporations" into shares of the resulting corporation, and no shares had been so converted. The Chancellor also pointed to the enactment of the short-merger statute as indicating a lack of prior authority to effect such a merger. He therefore held the merger unauthorized.
The Supreme Court reversed. The essential holding of the Court was that the general power to merge, conferred by Section 59, was not qualified or restricted by limitation or exception, and embraced the power to merge a wholly-owned subsidiary with its parent, even though no shares of the subsidiary had been converted. Evidently commenting on the Chancellor's reference to the act of 1937, the Court observed that that act does not expressly confer authority to merge, as does Section 59, but proceeds at once to declare that the parent corporation may possess itself of the property of a wholly-owned subsidiary by filing and recording a certificate. The Court further said [24 Del.Ch. 318, 11 A.2d 337]:
"Read in connection with the general and unrestricted authority conferred by Section 59, the amendment is declaratory of the right of all Delaware corporations to consolidate or merge, its immediate purpose being, not a grant of power, but a simplification of procedure with respect to mergers of parent corporations with their wholly-owned subsidiaries."
It is upon this language that plaintiffs lean so heavily in pressing the contention that Section 253 is purely procedural.
Clearly, plaintiffs overstate the holding of the Court. The reference to the "immediate purpose" of the amendment as a simplification of procedure is not a declaration that the statute confers no substantive rights. No such question was before the Court. We do not think that any such implication could have been intended, for at least one substantive right was conferred by the amendment, viz., the right of the parent to bring about the merger without being subject to any demand for appraisal from its stockholders.
When we consider the language of the amended statute, it is plain, as the Chancellor held, that its purport is more than procedural. The word "cash" is one of three separate and distinct kinds of consideration to be paid or distributed in respect of stock surrendered in a merger. How can the word be construed to mean "cash, but only for fractional shares"? Moreover, the phrase  "securities, cash or other consideration"  is obviously broader than the correlative language of Section 251, which is  "shares or other securities". There has been a change of substance. We think the statute means just what it says.
Plaintiffs build an incidental argument on the first sentence of subsection (d) of Section 253. It reads:
"Any plan of consolidation or merger which requires or contemplates any changes other than those herein specifically authorized with respect to the parent corporation, shall be accomplished under the provisions of sections 251 and 252 of this title."
Plaintiffs say that this statute means that changes in or affecting the ownership of the minority stockholders of the subsidiary must be accomplished under the provisions of Section 251. On the contrary, subsection (d) refers to changes with respect to the parent corporation. As the Chancellor pointed out, the quoted sentence is drawn from the original act of 1937, in which it clearly referred only to changes in the parent. It was designed for the protection of the parent's stockholders. There is no reason whatever to change or extend the meaning of the language after the adoption of the 1957 amendment.
Finally, plaintiffs attempt to build an argument on the provisions of subsection *897 (e) of the statute, which requires notice of the merger to be given to the minority stockholders and confers upon them the right to object to the merger and demand payment for their shares. It is said that the language of the section is in some way inconsistent with a construction of subsection (a) permitting the payment of cash for shares. The argument is involved and we have had difficulty in following it. Plaintiffs seem to say that if the law authorized the payment of cash for stock surrendered, the dissenting stockholder would be objecting only to the amount paid  not to the merger itself  and that the language of the statute does not fit such a case.
We think that the argument is without merit. The language of subsection (e) is general in its terms and is applicable to any case, no matter what may be the nature of the consideration distributed. It is designed to protect the minority stockholders' right to object and demand appraisal. We find no difficulty in applying it to cases in which cash is distributed.
We have considered all of plaintiffs' contentions with respect to the construction of Section 253, and find no substance in them.
We are of opinion that the merger agreement here was authorized by Section 253.

II.
Plaintiffs' constitutional point is this:
Each acquired his shares before the passage of the 1957 amendment. When he bought his stock Section 251 permitted only the conversion of shares into shares in a merger. The right to demand in a merger conversion of his shares into other shares became vested, and no subsequently enacted statute could destroy it. Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115.
The first answer to this contention is that both plaintiffs acquired their shares after the passage of the 1941 amendment permitting the conversion of shares into "other securities". Since, as heretofore noted, they might have been converted into notes or bonds, the premise of plaintiffs' argument is unsound.
But the overriding answer to the contention is the reserved power of the State to amend corporation charters and the power reserved in the Park & Tilford charter. Section 364 of our corporation law, 8 Del.C. § 364, provides:
"This chapter may be amended or repealed, at the pleasure of the Legislature, but any amendment or repeal shall not take away or impair any remedy against any corporation under this chapter, or its officers, for any liability which shall have been previously incurred. This chapter and all amendments thereof shall be a part of the charter of every corporation except so far as the same are inapplicable and inappropriate to the objects of the corporation."
This provision has been in our law since (at least) 1901. 22 Del.L. p. 353. The corporation's charter contains a similar reservation. It reads:
"Fifteenth: This corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation."
Such provisions have been construed in our courts. They are held to authorize the enactment of statutes changing the rights of stockholders in respect of shares acquired prior to such enactment. Davis v. Louisville Gas & Electric Co., 16 Del. Ch. 157, 142 A. 654. We do not read the comments on the Davis case by the Supreme Court in the Keller case (21 Del. Ch. 401 ff., 190 A. 120) as weakening its force. On the other hand, the broad holding in the Keller case was certainly modified by the Havender case.
*898 For authority elsewhere in accord with the general rule of the Davis case, see Bingham v. Savings Investment & Trust Co., 101 N.J.Eq. 413, 138 A. 659, and Beloff v. Consolidated Edison Co. of New York, 300 N.Y. 11, 87 N.E.2d 561.
The Beloff case involved a New York "short-merger" statute (on which the Delaware law was modeled) permitting the payment of cash to the minority stockholders of the subsidiary. Some of these stockholders assailed the statute as unconstitutional. The Court of Appeals repelled the objection and sustained the act under the reserved power of the State to alter or repeal corporate charters.
We find no violation of plaintiffs' constitutional rights.
The judgment of the Court of Chancery is affirmed.