JOSEPH S. STAUFFER and ANNABELLE STAUFFER,
Plaintiffs,

*vs.*

STANDARD BRANDS INCORPORATED, a Delaware corporation, MICHAEL J. ENGLISH, JOSEPH H. HOYT, RALPH J. LISMAN, JOEL S. MITCHELL and HENRY WEIGL,
Defendants.

*New Castle, February 21, 1962.*

*Alexander L. Nichols and Richard H. Allen,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for defendants.

SHORT, Vice Chancellor: Plaintiffs bring this action on behalf of themselves and all other stockholders of Planters Nut and Chocolate Company, a Delaware corporation [Planters of Delaware], similarly situated, to set aside the merger of Planters of Delaware into Standard Brands Incorporated, a Delaware corporation, under § 253 of the Delaware Corporation Law, or, in the alternative, for damages. Defendants have moved to dismiss the complaint for failure to state a claim on which relief can be granted.

Prior to June, 1960 Planters Nut and Chocolate Company was a Pennsylvania corporation [Planters of Pennsylvania] with 229,667 shares of common stock outstanding, of which 114,345 shares were owned by five trustees of three trusts known as the "Obici Trusts." In June, 1960 defendant Standard Brands Incorporated [Standard Brands] made an offer to the trustees to purchase their holdings of the common stock of Planters of Pennsylvania for a price of $105 per share. Two of the trustees agreed to sell at the price offered. The other three declined to sell at that price. Litigation ensued in Pennsylvania which resulted in a settlement on November 18, 1960 whereby Standard Brands paid to the trustees $115 per share for all of the shares held by the trusts. Thereafter Standard Brands made an offer to all other stockholders of Planters of Pennsylvania to purchase their shares at a price of $105 per share. As a result of the purchase of the shares held by the Obici trusts and the shares acquired from other stockholders pursuant to the offer to buy, Standard Brands became the owner of more than ninety per cent of all of the common stock outstanding.

On December 30, 1960 Standard Brands caused to be incorporated, as its wholly owned subsidiary, Planters of Delaware. On January 18, 1961 a notice was mailed to all stockholders of Planters of Pennsylvania, including plaintiffs, fixing January 30, 1961 as the date for a special meeting called to approve and adopt a plan of merger of Planters of Pennsylvania with and into Planters of Delaware. The notice also disclosed the intention of Standard Brands, following the merger of Planters of Pennsylvania into Planters of Delaware, to merge Planters of Delaware into Standard Brands pursuant to § 253 of the Delaware Corporation Law. The plan of merger was adopted at the stockholders' meeting on January 30, 1961. On February 1, 1961 Standard Brands, being the holder of over ninety-five per cent of the outstanding stock of Planters of Delaware, notified the minority stockholders thereof that it had, on that date, filed the required certificate evidencing the merger of Planters of Delaware into Standard Brands, that such stockholders would be paid cash in the amount of $105 for each of their shares, and that they had a right to an appraisal of the value thereof under 8 Del.C. § 262.

The complaint alleges that at the time of the merger of Planters of Delaware into Standard Brands the real value of Planters stock was $150 to $160 per share. It recites that two of the directors of Planters of Pennsylvania continued as directors of Planters of Delaware, and that the other three directors of Planters of Delaware were either directors or officers, or both, of Standard Brands. All of these directors are named defendants in this action. Plaintiffs admit that the mergers were consummated in strict conformity with the governing statutory procedures, but their complaint alleges that, by reason of their absence from the country, they had no actual knowledge of the merger proceedings until after the consummation thereof.

Plaintiffs seek to have the merger of Planters of Delaware into Standard Brands set aside on the grounds, (1) that the price to be paid minority stockholders on the merger so grossly undervalues Planters stock as to constitute a constructive fraud on such stockholders, and (2) that Standard Brands, as the dominating stockholder, and the directors of Planters breached a fiduciary obligation to the minority by failing to determine and offer a fair price for their shares.

Plaintiffs' only challenge to the validity of the merger relates to the fairness of the price per share offered to minority stockholders as the final step to make the merger of Planters of Delaware into Standard Brands effective. Where this is the situation in a § 253 merger, that is, a dispute as to the value of the shares, or the adequacy of the price offered, the stockholder's remedy ordinarily lies in an appraisal proceeding under § 262. This is so because § 253 permits a parent corporation owning more than ninety per cent of the stock of a subsidiary to eliminate the subsidiary's minority stockholders as participants in the continuing enterprise by the payment of cash. *Coyne v. Park & Tilford Distillers Corp.*, 38 *Del.Ch.* 514, 154 *A.2d* 893.

Since the basis of plaintiffs' complaint is difference in value, defendants argue that the right to an appraisal affords a complete, adequate and exclusive remedy. On the other hand, plaintiffs say that it has long been the settled law of this state that a merger may be set aside as fraudulent where the terms offered therein are so unfair to minority stockholders as to be shocking to the conscience of the court

and that in such circumstances a dissenting stockholder is not confined to an appraisal proceeding under § 262. See *MacFarlane v. North American Cement Corporation*, 16 *Del.Ch.* 172, 157 *A.* 396; *Cole v. National Cash Credit Ass'n*, 18 *Del.Ch.* 47, 156 *A.* 183. Plaintiffs contend that the principle of the cited cases, and others on which they rely, applies as well to a merger under § 253 as to one under § 251 or § 252, which pertain to mergers by agreement of the corporations involved. These cases were all decided before 1957 when the Legislature amended § 253 by providing a procedure for the merger of a subsidiary and a parent corporation owning more than ninety per cent of the stock of the subsidiary. Subparagraph (a) of the amendment provides that a corporation owning at least ninety per centum of the shares of stock of any other corporation may file in the office of the Secretary of State a certificate of ownership and merger, and setting forth a copy of the resolution of its board of directors to merge the subsidiary into it upon such terms and conditions as therein contained, "including the securities, cash or other consideration to be issued, paid or delivered by the surviving corporation upon surrender of each share of the subsidiary corporation * * * not owned by the parent corporation." This subsection also provides for recording of a certified copy of the certificate in the office of the recorder of deeds of the county in which the principle office of either the parent or the subsidiary is located.

Subsection (b) of the amendment provides that upon the recording of the certificate pursuant to subsection (a) "all of the estate, property, rights, privileges and franchises of the corporation * * * which did not survive the merger shall vest in and be held and enjoyed by the surviving corporation," to the same extent as the same were before held by the corporation which did not survive, but subject to all liabilities and obligations of the corporation which did not survive.

Subsection (c) of the amendment provides for the relinquishment of the corporate name of the surviving corporation and assumption in place thereof of the name of a corporation which did not survive the merger.

Subsection (d) of the amendment provides that any plan of merger which contemplates changes other than those specifically

authorized by § 253 shall be accomplished under sections 251 and 252. This subparagraph further provides that "[t]he provisions of section 262 of this title [the appraisal statute] shall not apply to any merger effected under this section, except as provided in subsection (e) of this section."

Subsection (e) of the amendment provides that where less than one hundred per cent of the stock of a subsidiary is owned by the parent corporation immediately prior to the merger, the surviving corporation shall within ten days after filing the certificate of ownership and merger notify, by registered mail, each stockholder of such subsidiary that the certificate has been filed and recorded and the terms and conditions of the merger. It further provides that if any such stockholder shall within twenty days after the mailing of the notice object in writing to the merger and demand payment for his stock, the surviving corporation shall, within thirty days after the expiration of the twenty day period, pay to him the value of his stock on the date of the recording of the certificate. It further provides that if the surviving corporation and an objecting stockholder fail to agree within the thirty day period as to the value of such stock, the stockholder or the corporation may file a petition in this court for an appraisal as provided in subsection (c) of § 262 and that thereupon the parties shall follow the procedure set forth in subsection (d) to (j), inclusive, of § 262.

Section 251 of *Title 8, Delaware Code,* provides for the consolidation or merger of domestic corporations to be accomplished by an agreement between the directors of the corporations proposed to be merged which shall, among other things, prescribe the manner of converting the shares of each of the corporations into shares or other securities of the resulting corporation, such agreement to be ratified by the stockholders of each of such corporations representing two-thirds of the total number of shares of its capital stock. By an amendment to § 251 passed by the Legislature in 1955, 50 *Del.Laws, Ch.* 467, § 4, it was provided that any such agreement "may provide for the payment of cash in lieu of the issuance of fractional shares of the resulting or surviving corporation."

Section 252 provides for the consolidation or merger of domestic and foreign corporations. For present purposes, it is only necessary to say that the procedure provided by this section is similar to that provided by § 251, including the requirement that the agreement of merger shall prescribe the manner of converting the shares of the constituent corporations into shares or other securities of the resulting corporation. By an amendment passed by the Legislature in 1955, 50 *Del.Laws, Ch.* 467, § 7, payment of cash in lieu of the issuance of fractional shares was also authorized.

It is to be observed from the provisions of sections 251 and 252 that minority stockholders of corporations merging thereunder may not be summarily eliminated from the continuing enterprise, but are given the option of accepting securities in the surviving corporation, or, alternatively, of demanding payment in cash for their holdings by an appraisal proceeding pursuant to § 262. The difference in the rights of minority stockholders in merger proceedings under these sections and those conferred by § 253 are immediately apparent. Since a majority stockholder may not under a § 251 or § 252 merger eliminate minority stockholders as participants in the continuing enterprise, it is obvious that the majority should not be permitted to force the minority stockholder to elect his appraisal rights and thereby enforce his withdrawal. The courts of this state have, therefore, rightly held that in a merger under sections 251 or 252 gross undervaluation of the shares of minority stockholders may be shocking to the court's conscience and, therefore, constructively fraudulent. However, in a § 253 merger the holder of more than ninety per cent of the outstanding stock of a subsidiary has the right to pay minority stockholders the value of their shares and thereby eliminate them from continuing participation. The only requirement is that the surviving corporation shall notify the stockholder that the certificate of ownership and merger has been filed and recorded and the terms and conditions of the merger. If a stockholder is dissatisfied with the value placed upon his shares he may, failing an agreement upon value, proceed to an appraisal. The dissenting stockholder is thus provided with an adequate and complete remedy. That it is also, under the circumstances presented by the present complaint, an exclusive remedy is evident, for it was obviously the intention of the

Legislature that disputes as to the value of shares of minority stockholders should be settled by an appraisal proceeding. As the Supreme Court said in *Coyne v. Park & Tilford Distillers Corporation, supra:* "It [subsection (e) of § 253] is designed to protect the minority stockholders' right to object and demand appraisal."

Though the question here presented is one of first impression in this state, there is precedent elsewhere for the propriety of the view which I take. New York has a "short-merger" statute substantially the same as § 253 of our corporation law. In *Amella v. Consolidated Edison Co. of New York, Sup.* 73 *N.Y.S.2d* 263 (1947). *aff'd* 273 *App.Div.* 755, 75 *N.Y.S.2d* 513, *appeal denied,* 297 *N.Y.* 1031, 78 *N.E.2d* 868 the court, on motion, dismissed a complaint similar to that here involved. The court said:

> "The third cause of action alleges that defendant, being under a fiduciary duty to the minority stockholders to assure them payment of the full value of the stock as one of the terms of the merger, arbitrarily offered a price of $135 a share, though the value thereof was much greater. Demand is therefore made that defendant account to plaintiffs for the excess of the true value received by defendant over the $135 per share paid to plaintiffs.

> "Section 85(7) of the Stock Corporation Law provides that stockholders dissenting from a merger may apply within twenty days to have their stock appraised; 'the remedy of appraisal and payment was intended to afford fair and just compensation to the dissenters and at the same time provide the method by which their objections could be fairly composed so as to enable the consolidation to proceed.' *Anderson v. International Minerals & Chemical Corporation,* 295 *N.Y.* 343, 350, 67 *N.E.2d* 573, 576."

In *Beloff v. Consolidated Edison Co. of New York,* 300 *N.Y.* 11, 87 *N.E.2d* 561 (1949), the Court of Appeals of New York in considering the "short-merger" statute, had this to say:

> "It is fully as well settled that if the merger (or consolidation) is duly consummated in accordance with the statutes, the remedy of appraisal and payment is the only one available to dissenting shareholders, and that such dissenters on such an appraisal are entitled to receive fair and full compensation for all

their rights * * *. In short, the merged corporation's shareholder has only one real right; to have the value of his holding protected, and that protection is given him by his right to an appraisal. * * *. He has no right to stay in the picture, to go along into the merger, or to share in its future benefits. He has no constitutional right to deliberate, consult or vote on the merger, to have prior notice thereof or prior opportunity to object thereto. His disabilities in those respects are the result of his status as a member of a minority, and any cure therefor is to be prescribed by the Legislature, if it sees fit."

■ In *Coyne v. Park & Tilford Distillers Corporation, supra,* the New York statute was stated to be the model for our § 253. Where the language of a statute of a foreign state is adopted by the Legislature of this state, the courts here will adopt the judicial construction placed upon the statute by the courts of the foreign state. *Chicago Corp. v. Munds,* 20 *Del.Ch.* 142, 172 *A.* 452. Under this rule, New York authority should be accorded great weight. But plaintiffs say that the courts of New York do not recognize constructive fraud as a ground for enjoining or setting aside a merger. I need not pause to consider this contention for the present complaint, as already observed, alleges fraud and breach of trust based solely on the alleged inadequacy of the price offered minority stockholders on the merger.

Defendants contend that the real objective of plaintiffs' complaint, as disclosed by the nature of the relief demanded, is to obtain an appraisal. They point to paragraph 19 of the complaint which alleges that the vacating of the merger will not prejudice Standard Brands, or its stockholders or creditors, "except to the extent that Standard is, as an incident thereto, required to pay such minority stockholders the just and full value of their stock." They point also to the prayer for alternative relief that "defendants, jointly and severally, be requested to account and pay to plaintiffs and such other stockholders of Planters of Delaware the amount of all damage and losses sustained by them * * *," which damage and loss defendants say is to be measured by the difference between the $105 per share merger price and the amount which plaintiffs might have received in an appraisal pro-

ceeding. From these prayers defendants argue that it is obvious that the only relief which plaintiffs seek is that to which they would be entitled in an appraisal proceeding. There would seem to be some merit to defendants' argument. But I do not find it necessary to pass upon this contention as I have already concluded that the merger may not be set aside on the present complaint.

 Plaintiffs contend that in considering the facts set forth in their complaint the court should disregard the merger of Planters of Pennsylvania and Planters of Delaware and consider the transaction as, in fact, a direct merger of Planters of Pennsylvania into Standard Brands. Plaintiffs argument in this behalf is not convincing. In the absence of fraud, the separate entity of a corporation is to be recognized. This principle has been enunciated by all of the courts of this state. There is no suggestion in the complaint, or in plaintiffs' brief, that the merger of Planters of Pennsylvania and Planters of Delaware was attended by any fraudulent conduct of the directors of either of such corporations. In fact, plaintiffs own statement is that "this was only a formal change of states of incorporation and the merger had no other effect upon the stockholders." Similar expressions are also found in plaintiffs' brief.

██ Plaintiffs contend that the directors of Planters of Delaware made no impartial or independent appraisal of the value of that corporation's stock in connection with the merger with Standard Brands. The latter, as the holder of more than ninety per cent of the stock of Planters of Delaware, had the statutory right to merge Planters of Delaware into itself under the "short merger" proceeding. This right was unilateral in nature and in no sense dependent upon any action of the board of directors of Planters of Delaware. The members of that board had no right, or rights, with respect to such merger, or the terms thereof. Having no rights, they had no duty to minority stockholders. This being so, a dismissal, in any event, would be required as to defendants English and Lisman. These defendants were neither officers nor directors of Standard Brands at or before the time of the merger. They were directors of Planters of Delaware.

Plaintiffs point out the differences in relief available in an appraisal proceeding and in a suit which results in setting aside a

merger. While the differences mentioned may be true, they result from the manner of legislative treatment of the subject with which the court is not at liberty to take issue.

Plaintiffs have failed to allege a case upon which the relief sought can be granted. Their only remedy lies in their right to an appraisal. The fact that they have permitted this right to lapse does not alter the case.

The motion to dismiss is granted.

Order on notice.