ROTHSCHILD INTERNATIONAL CORPORATION, a corporation of the State of Washington, Plaintiff-Appellant,

v.

LIGGETT GROUP INC., GM Sub Corporation and GM Sub II Corporation, corporations of the State of Delaware, and Grand Metropolitan Limited, a corporation of England, Defendants-Appellees.

Supreme Court of Delaware.

Submitted Jan. 16, 1984.

Decided March 20, 1984.

**134**

Gerald J. Fields (argued), and Raymond J. Soffientini of Battle, Fowler, Jaffin & Kheel, New York City, of counsel, Thomas S. Lodge of Connolly, Bove, Lodge & Hutz, Wilmington, for appellant.

Gandolfo V. DiBlasi (argued), John L. Warden and Ida C. Wurczinger of Sullivan & Cromwell, New York City, of counsel, R. Franklin Balotti and Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, for appellees.

Before McNEILLY, HORSEY and CHRISTIE, JJ.

HORSEY, Justice.

This appeal is from a summary judgment Order of the Court of Chancery dismissing a purported class action filed by the owners of 7% cumulative preferred stock in Liggett Group, Inc. ("Liggett"), a Delaware corporation. The suit arises out of a combined tender offer and reverse cash-out merger whereby the interests of the 7% preferred shareholders were eliminated for a price of $70 per share, an amount $30 below the liquidation preference stated in Liggett's certificate of incorporation. Plaintiff-appellant asserts claims for breach of contract and breach of fiduciary duty based on the non-payment of the $30 premium.

## I

Plaintiff, Rothschild International Corp., filed a class action in the Court of Chancery on behalf of 7% cumulative preferred stockholders of Liggett against defendants Liggett, Grand Metropolitan Limited ("GM"), a corporation of England, GM Sub Corporation ("GM Sub"), a Delaware corporation formed for the purpose of acquiring Liggett, and GM Sub II, a wholly-owned Delaware subsidiary of GM. The class was to consist of those 7% shareholders who tendered their preferred stock for $70 per share in response to GM's tender offer and those who did not so tender and were cashed out for the same per share price in the subsequent merger of GM Sub II into Liggett.

On motion by defendants, GM was dismissed as a party to the action for lack of personal jurisdiction; similarly, the case against GM Sub II was dismissed as GM Sub II had ceased to exist by virtue of its merger into Liggett in August, 1980. After such dismissal, but during the pendency of plaintiff's motion for class certification, both sides moved for summary judgment on the merits of plaintiff's claims. Upon consolidation of the motions and presentation of oral argument, the Court granted defendants' motion for summary judgment.

On appeal, plaintiff contends that the takeover of Liggett via the combined tender offer and merger in essence effected a liquidation of the company thus warranting payment to the holders of the 7% preferred stock of the $100 liquidation value set forth in Liggett's charter. Plaintiff's breach of contract and breach of fiduciary duty claims are premised on a single assertion—that GM's plan of acquisition was equivalent to a liquidation. However, as we view the record, the transaction did not involve a liquidation of Liggett's business. Hence, we must affirm.

## II

### A.

There is no dispute of facts. Liggett's certificate of incorporation provided that

"[i]n the event of any liquidation of the assets of the Corporation (whether voluntary or involuntary) the holders of the 7% Preferred Stock shall be entitled to be paid the par amount of their 7% Preferred shares and the amount of any dividends accumulated and unpaid thereon...." [1] Under the terms of Liggett's charter, each share of the 7% security carried a $100 par value. Plaintiff makes two interrelated arguments: (1) that the economic effect of the merger was a liquidation of Liggett's assets "just as if [Liggett] were sold piece meal to Grand Met"; and (2) that any corporate reorganization that forcibly liquidates a shareholder's *interests* is tantamount to a liquidation of the *corporation* itself. From this, plaintiff argues that it necessarily follows that defendants' failure to pay the preferred shareholders the full liquidation price constituted a breach of Liggett's charter. We cannot agree with either argument.

■■■ Preferential rights are contractual in nature and therefore are governed by the express provisions of a company's certificate of incorporation. Stock preferences must also be clearly expressed and will not be presumed. *See Wood v. Coastal States Gas Corp.*, Del.Supr., 401 A.2d 932 (1979); *Ellingwood v. Wolf's Head Oil Refining Co.*, Del.Supr., 38 A.2d 743 (1944). *See also Hibbert v. Hollywood Park, Inc.*, Del.Supr., 457 A.2d 339 (1983); *Shanghai Power Co. v. Delaware Trust Co.*, Del.Ch., 316 A.2d 589, 594 (1974).

■■■ Liggett's charter stated that the $100 liquidation preference would be paid only in the event of "any liquidation of the assets of the Corporation." The term "liquidation", as applied to a corporation, means the "winding up of the affairs of the corporation by getting in its assets, settling with creditors and debtors and apportioning the amount of profit and loss." W. Fletcher, *Corporations* § 7968 (1979). *See*

*Sterling v. Mayflower Hotel Corp.*, Del. Supr., 93 A.2d 107, 112 (1952).

■■■ Our view of the record confirms the correctness of the Chancellor's finding that there was no "liquidation" of Liggett within the well-defined meaning of that term. Clearly the directors and shareholders of Liggett determined that the company should be integrated with GM, not that the corporate assets be liquidated on a "piece meal" basis. The fact is that Liggett has retained its corporate identity. Having elected this plan of reorganization, the parties had the right to avail themselves of the most effective means for achieving that result, subject only to their duty to deal fairly with the minority interests.

Thus, we must construe Liggett's liquidation provision as written and conclude that the reverse cash-out merger of Liggett did not accomplish a "liquidation" of Liggett's assets. Only upon a liquidation of its assets would Liggett's preferred shareholders' charter rights to payment of par value "spring into being." *Rothschild International Corp. v. Liggett Group*, Del. Ch., 463 A.2d 642, 647 (1983).

*Sterling v. Mayflower Hotel Corp.*, *supra* is in point on this issue. There, this Court held that a merger is not equivalent to a sale of assets. In so holding, the Court followed the well-settled principle of Delaware Corporation Law that "action taken under one section of that law is legally independent, and its validity is not dependent upon, nor to be tested by the requirements of other unrelated sections under which the same final result might be attained by different means." *Orzeck v. Englehart*, Del.Supr., 195 A.2d 375, 378 (1963).

■■■ It is equally settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law,

---

1. The certificate also provided that its 7% *Cumulative Preferred stock could not be redeemed*, called or converted into any other security. The stock also guaranteed a fixed 7% return per annum.

a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares. *Federal United Corp. v. Havender*, Del.Supr., 11 A.2d 331, 338 (1940). *Accord, Langfelder v. Universal Laboratories, Inc.*, D.Del., 68 F.Supp. 209 (1946), *aff'd*, 3rd Cir., 163 F.2d 804, 806–807 (1947); *Hottenstein v. York Ice Machinery Corp.*, 3rd Cir., 136 F.2d 944, 950 (1943).

Plaintiff claims that reliance on *Sterling* and *Havender* for a finding that Liggett was not liquidated is misplaced. To support this claim, plaintiff variously argues: (1) that as *Sterling* and *Havender* pre-dated cash mergers, they are not dispositive as to whether a Liggett-like takeover could constitute a liquidation; (2) that the relied-on authorities viewed a merger as contemplating the continuance of a stockholder's investment in the corporate enterprise; and (3) that because of the *Sterling/Havender* view of a merger and the unique features of the 7% preferred stock, the 7% shareholders could reasonably expect to be paid the $100 liquidation preference in any circumstance effecting a total elimination of their investment in Liggett.

■■■ The short answer to plaintiff's arguments is that, as a matter of law, stock issued or purchased prior to the Legislature's authorization of cash mergers does not entitle the stockholder to any vested right of immunity from the operation of the cash merger provision. *Coyne v. Park & Tilford Distillers Corp.*, Del.Supr., 154 A.2d 893 (1959). Further, it is settled that the State has the reserved power to enact laws having the effect of amending certificates of incorporation and any rights arising thereunder. *Id.* at 897. As plaintiff is charged with knowledge of the possible defeasance of its stock interests upon a merger, *Singer v. Magnavox Co.*, Del. Supr., 380 A.2d 969, 978 (1977), plaintiff cannot successfully argue for relief on the basis of the uniqueness of the 7% stock and the stockholders' "reasonable expectations" theory.

### B.

Plaintiff also claims that Liggett and GM, acting through its subsidiary GM Sub, breached their fiduciary duties to accord to the 7% shareholders fair and equitable terms of conversion. Simply stated, plaintiff argues that, irrespective of whether a de facto liquidation occurred, "[a]ny payment less than the full liquidation price was not 'entirely fair' to the 7% Preferred stockholders."

■■■ We agree with the Chancellor that plaintiff's "fairness" argument presumes a *right* of the 7% shareholders to receive full liquidation value and does not *per se* raise the issue of the intrinsic fairness of the $70 price offered at the time of the tender offer and merger. However, even assuming *arguendo* that plaintiff did present a fairness issue, it is well settled that "the stockholder is entitled to be paid for that which has been taken from him, *viz.,* his proportionate interest in a going concern." *Tri-Continental Corp. v. Battye*, Del.Supr., 74 A.2d 71, 72 (1950). Moreover, the measure of "fair value" is not "liquidation value." Rather, the 7% shareholders were entitled only to an amount equal to their proportionate interests in Liggett as determined by "all relevant factors." 8 *Del.C.* § 262; *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701 (1983); *Tri-Continental Corp. v. Battye, supra.*

Thus, having reviewed the transaction, we find that the Chancellor did not err as a matter of law in granting defendants' motion for summary judgment.

\*    \*.    \*

Affirmed.