**RFE CAPITAL PARTNERS, L.P., a Delaware limited partnership, Plaintiff,**

v.

**WESKAR, INC., a Delaware corporation, Defendant.**

C.A. No. 93C–06–070.

Superior Court of Delaware, New Castle County.

Submitted March 27, 1994.
Decided July 1, 1994.

Lawrence A. Hamermesh, Seth D. Rigrodsky, Kurt M. Heyman, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Gary W. Aber, of Heiman, Aber & Goldlust, Wilmington, Steven H. Williams, John C. Josefsberg of Morrison & Hecker, Phoenix, AZ, for defendant.

### MEMORANDUM OPINION

BABIARZ, Judge.

On June 9, 1993, Regional Financial Enterprises, L.P. ("RFE"), filed a complaint against Weskar, Inc. ("Weskar") alleging breach of contract and seeking a declaratory judgment that 8 *Del.C.* § 160 does not permit Weskar to refuse to perform its obligations under a loan agreement entered into between the parties. Subsequently, on July 30, 1993, Weskar filed an answer and counterclaim.

In its answer, Weskar denies that it has breached its contractual obligations to RFE, and asserted as a second affirmative defense that the relief sought by RFE is barred by 8 *Del.C.* § 160.

Before the Court is RFE's motion for partial summary judgment on Count I of the complaint. Count I asks the Court to issue a declaratory judgment with respect to the application of 8 *Del.C.* § 160 to the facts of the instant action. In addition, RFE asks the Court to strike Weskar's second affirmative defense. For the reasons discussed herein, the Court grants RFE's motion for partial summary judgment with respect to Count I and the Court grants RFE's motion to strike Weskar's second affirmative defense.

*Factual Background*

On March 11, 1988, RFE entered into an agreement (the Agreement) with Weskar and its subsidiary, Western Cabinet and Millwork, Inc. (Western). The terms of the Agreement provided that in return for a $2,000,000 loan Western would issue RFE a $2,000,000 note at 13% per annum over five years, and a Stock Subscription Warrant (Warrant) allowing RFE to purchase 320 shares of Weskar common stock at a purchase price of $.01 per share. Section 11 of the Agreement provided that, as of March 11, 1993, RFE could force Weskar to repurchase the original Warrant at a price determined by an agreed upon calculation. The sole limitation to this provision was that RFE could not force Weskar to repurchase the Warrant if Weskar had consummated a public offering of its securities.

On December 8, 1988, the parties modified their agreement to reflect Western's prepayment of $1,400,000 of principal, together with accrued interest, on the original note. As a result of this prepayment, the original note and Warrant were exchanged for a new note in the amount of $600,000, with interest at 13% per annum, and the number of shares designated in the Warrant was reduced from 320 shares to 240 shares of Weskar common

stock at $.01 per share. Western subsequently paid RFE the remaining $600,000 plus accrued interest.

On April 8, 1993 [1], RFE exercised its rights under Section 11 of the Agreement by giving written notice to Weskar of its request that Weskar repurchase the Warrant dated December 8, 1988. In a written response dated April 29, 1993, the managing directors of Weskar refused to perform Weskar's obligations under Section 11 of the Agreement claiming that the repurchase of the Warrant would require Weskar to impair its capital in violation of 8 *Del.C.* § 160. In fact, Weskar contends that in the event it is required to purchase the Warrant at a price of $3,624,-161.76 [2], an amount greater than the value of Weskar itself, Weskar will be forced to declare bankruptcy. The instant action stems from Weskar's refusal to buy back the Warrant from RFE.

*Standard of Review*

The Court's function in ruling on a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). If after viewing the record in a light most favorable to the nonmoving party, the Court finds that there are no genuine issues of material fact, summary judgment is appropriate. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.,* Del.Supr., 312 A.2d 322, 325 (1973). Summary judgment will not be granted under any circumstances when the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467 (1962).

*Discussion*

■ The sole issue before the Court is whether, pursuant to the language of 8 *Del.C.* § 160, Weskar can lawfully avoid its contractual obligation to buy back the Warrant from RFE. Section 160 states that:

---

1. As of April 8, 1993, Weskar had not entered into a public offering of its securities.

2. This figure was calculated pursuant to Section 11(c) of the Purchase Agreement entered into by the parties on March 8, 1988 and subsequently amended on December 8, 1988.

(a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own, and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided however, that no corporation shall:

(1) Purchase or redeem its own shares of *capital stock* for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation....

8 *Del.C.* § 160(a) (emphasis added). It is a well-settled rule of statutory construction that where the language of a statute conveys a clear and definite meaning, the Court must give full effect to that meaning. *Stroud v. Grace,* Del.Supr., 606 A.2d 75, 87 (1992) (Court must act with caution and restraint when ignoring the clear language of the General Corporation law).

 The plain language of § 160 relieves a corporation from an obligation to purchase its own capital stock if such a purchase would result in an impairment or a further impairment of the corporation's capital. It does not by its terms apply to the repurchase of stock warrants. Presumably, had the legislature intended a broader scope for this section it would have expressly included additional forms of securities within the language of § 160. *See Joseph E. Seagram & Sons v. Conoco, Inc.,* D.Del., 519 F.Supp. 506, 512 (1981) (the term "securities", and not stock employed in 8 *Del.C.* § 202(b) was intended to reach a wider class of interests than mere capital shares). Nevertheless, Weskar asserts that in the instant action, the Court should treat the Warrant as capital stock for purposes of § 160.

In support of its position Weskar relies primarily on language used in a Shareholder's Agreement which was entered into by the parties in conjunction with the Agreement and the Warrant. Section 1(e) of the Shareholders Agreement defines Stock as including "the presently issued and outstanding shares of capital stock of the Corporation *and any options or stock subscription warrants exercisable therefor (and which options and warrants shall be deemed to be out-*

*standing Shares)."* In addition, the Shareholders Agreement includes RFE within the definition of a "Stockholder." Based on this language, Weskar asserts that in giving RFE the Warrant, the parties intended to give RFE an equity position in Weskar.

Generally, stockholder agreements are created for the purpose of regulating the transferability of stock and the Shareholder Agreement at issue in this case expressly does so. In addition Section 5 of the Shareholder Agreement gives RFE the right to designate one of the not more than seven members of Weskar's Board of Directors. Section 5 provides as follows:

SECTION 5. *Election of Directors....* the Stockholders shall vote all shares of Stock owned by them for the election of a Board of Directors, consisting of not more than seven persons, including one director designated by RFE; provided, however, that if at any time RFE shall determine not to so designate a director, it shall be entitled to have an observer present at all meetings of the Board of Directors of the Corporation, to receive notices thereof and copies of all information provided to directors, ...

The right to elect directors generally vests with the shareholders but it is not unheard of for a creditor or other interested party to secure Board representation to protect its interests. Thus, the securing of a seat on the Board of Directors of a corporation is not determinative of stockholder status. In construing the meaning of this Section, the Court finds that while RFE had the right to designate a member of Weskar's Board of Directors, and while the Shareholder Agreement defined "stock" as including the Warrant, ownership of the Warrant does not encompass the right to vote. This construction is consistent with the language of Section 7 of the Warrant which provides that:

SECTION 7. *No Stockholder Rights.* This Warrant shall not entitle the holder hereof *to any voting rights* or other rights as a stockholder of [Weskar].

(emphasis added). The Warrant unequivocally states that RFE does not have the right to vote or, for that matter, to acquire any

stockholder rights until it exercised its right to purchase the 240 shares of Weskar capital stock. Moreover, at no time did RFE attempt to vote its Warrant in the election of directors. As a result, the Court finds that despite the definitions set forth in the Shareholders Agreement, the fact remains that RFE does not own shares of capital stock in Weskar. Therefore, this Court will not treat the Warrant at issue in this case as capital stock.

In making this finding, the Court relies on the language of the Original Agreement which repeatedly refers to the Warrant as separate and distinct from shares of capital stock. For example, within the definition section, § 8.2, "Restricted Securities" is defined as "the Note, the Warrant, the Warrant Shares *and any shares of capital stock received in respect of any thereof....*" In addition, throughout the Agreement there are numerous references to common stock and outstanding warrants as separate ownership interests. *See* Agreement §§ 4.2, 4.3, 4.10, 4.12, 4.14, 5(b), 5(c), 7.6.

Weskar asserts that if the Court declares that § 160 does not apply to the instant action, the Court is elevating form over substance because the economic impact of a repurchase of the Warrant will be identical to the economic impact of a repurchase of the 240 shares of capital stock available under the Warrant. To support this argument, Weskar relies heavily on two Delaware Chancery Court decisions, *In re International Radiator Co.,* Del.Ch., 92 A. 255 (1914) and *Pasotti v. United States Guardian Corp.,* Del.Ch., 156 A. 255 (1931).

The Court finds neither *International Radiator* nor *Pasotti* to be persuasive. In each case consideration was paid or partially paid for the issuance of capital stock, a transaction which the Court found amounted to a stock subscription. Neither case addressed the issue of whether the issuance of a warrant, or option, could in effect be treated as capital stock for purposes of § 160. In this instance, the transaction at issue involves the issuance of a warrant in form and in substance. While the economic effect of a repurchase of the Warrant will result in an impairment of the capital of Weskar, such a transaction is not prohibited by 8 *Del.C.* § 157. *See* 6A Fletcher Cyclopedia Corporations § 2641 (1989). Therefore, under the doctrine of independent legal significance, which provides that statutory restraints applicable to one form of transaction do not apply to a different form of transaction undertaken pursuant to separate statutory authority[3], 8 *Del.C.* § 160 does not permit Weskar to avoid its contractual obligation to purchase the Warrant from RFE.

■ Weskar further contends that the Warrant should be treated as capital stock because there are numerous features of equity ownership contained within the Warrant. Specifically, Weskar argues that RFE was vested with the privileges of a minority shareholder because, with ownership of the Warrant, RFE had complete access to Weskar's books and records, RFE had the power and right to vote[4] and designate a Director to Weskar's Board of Directors, and RFE had the right to receive notice of all shareholder and Board of Director meetings. In addition, Weskar argues that RFE's right to realize complete appreciation on its equity ownership without payment of meaningful additional cash consideration therefor, and RFE's protection from dilution of its equity position by virtue of the Shareholder's agreement evidence an equity position in Weskar. (Answ.Br. at 17.)

On the other hand, RFE is not entitled to vote under 8 *Del.C.* § 212, to receive dividends under 8 *Del.C.* § 170, to receive any distribution on liquidation of the corporation under 8 *Del.C.* §§ 280, 281, to an appraisal in the event of a merger or consolidation under 8 *Del.C.* § 251, to compel the holding of an annual stockholders' meeting under 8 *Del.C.* § 211, and to bring a stockholders' derivative suit under 8 *Del.C.* § 327 and Chancery Court Rule 23.1.

Whether ownership of the Warrant vested RFE with any type of equitable ownership in Weskar is beside the point. At issue is

---

**3.** *Rothschild International Corp. v. Liggett Group, Inc.,* Del.Supr., 474 A.2d 133, 136 (1984).

**4.** As previously discussed, the Court finds that ownership of the Warrant does not encompass the right to vote.

whether the Warrant amounts to capital stock for § 160 purposes. Because it lacks many of the features of capital stock or a subscription to capital stock and because Warrants are specifically authorized in § 157 and not mentioned in § 160, the Court holds that repurchase of the option is not prohibited under § 160.

Weskar has advanced several arguments attacking the validity of the Warrant. These arguments are not considered as RFE's motion does not ask the Court to address that issue.

Based on the foregoing, RFE's motion for partial summary judgment with respect to Count I of the Complaint is *granted.* In addition, RFE's motion to dismiss Weskar's second affirmative defense is *granted.*

IT IS SO ORDERED.