**MARINER LDC and Caspian Capital Partners, L.P., Plaintiffs,**

v.

**STONE CONTAINER CORPORATION, Defendant.**

**No. 16724–NC.**

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 10, 1998.
Decided: Nov. 13, 1998.
Revised Decision: Nov. 17, 1998.

Michael Hanrahan, Stephanie M. Tarabicos, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Plaintiffs.

Kenneth J. Nachbar, Alan J. Stone, Christopher F. Carlton, of Morris, Nichols, Arsht & Tunnell, Wilmington; of counsel: Richard B. Kapnick, Nancy A. Temple, of Sidley & Austin, Chicago, Illinois, for Defendant.

OPINION

LAMB, Vice Chancellor.

## I. INTRODUCTION

Plaintiffs Mariner LDC and Caspian Capital Partners, L.P. (collectively, "plaintiffs"), holders of Series E Cumulative Convertible Exchangeable Preferred Stock ("Series E Preferred Stock") of defendant Stone Container Corporation ("Stone"), filed this action seeking injunctive relief for certain alleged violations of their rights under Stone's Restated Certificate of Incorporation ("Certificate"), arising out of a proposed merger of JSC Acquisition Corporation ("Sub"), a wholly-owned subsidiary of Jefferson Smurfit Corporation ("JSC") with and into Stone ("Merger"). A hearing on this motion was held on November 10, 1998. For the reasons discussed, *infra*, plaintiffs' motion for preliminary injunctive relief is denied.

### A. Background

On May 10, 1998, Stone, JSC and Sub entered into an agreement and plan of merger ("Merger Agreement"). In the proposed merger each outstanding share of Stone common stock (other than those owned by JSC and its wholly owned subsidiaries, which will be cancelled) will be converted into .99 of a share of the common stock of JSC. After the merger becomes effective, JSC will change its name to Smurfit–Stone Container Corporation ("SSCC"). Moreover, in the merger, each issued and outstanding share of the capital stock of Sub will be exchanged for shares of Stone common stock. Thus, as a result of the merger, SSCC will become the parent corporation and Stone will survive as its wholly owned subsidiary. The Series E Preferred Stock, at issue in this litigation, will remain outstanding after the merger but the terms of its conversion feature will be changed, by amendment to the Certificate, to make the Series E Preferred Stock convertible into shares of SSCC common stock. A special meeting of the Stone common shareholders has been called for November 17, 1998, for the purpose of

voting on the merger.[1] The holders of the Series E Preferred Stock are to be afforded no vote on the merger or the related proposals.

Plaintiffs allege that the amendments to the Certificate, to be effected as part of the merger, will alter the rights of the Series E Preferred Stock "adversely and unilaterally" without the two-thirds class vote of the holders of those shares which plaintiffs allege is required by the Certificate. Plaintiffs argue that these amendments will adversely affect the Series E Preferred Stock by "(i) changing its basic right to convert into Stone common stock [into the right to convert into SSCC common stock]; (ii) making its conversion right dependent on vague and incomplete language in the certificate of incorporation of [SSCC] which can be amended without the consent of the Series E Preferred Stock; (iii) permitting Stone and [SSCC] to circumvent the protections for its dividend, voting, conversion and liquidation rights and (iv) deleting or diluting current requirements for ensuring that validly issued, publicly traded stock will be reserved and issued upon conversion."

In connection with these claims, plaintiffs seek declaratory and injunctive relief determining that (1) the merger violates the rights of the Series E Preferred Stock under the Certificate (Count II of the complaint); and (2) as a result of the proposed amendments to the Certificate, the Series E Preferred Stock is entitled to vote on the merger proposal along with the common (Count III of the complaint).[2]

## B. Pertinent Certificate Provisions

Plaintiffs' claims involve several current sections of the Certificate, as well as two proposed amendments thereto. In addition, plaintiffs' claims address an amendment to be made to SSCC's certificate. All of these charter provisions are pertinent to my decision and are set out below.

Section 6(a) of the Article Fourth, Subpart I.B. of the Certificate establishes the basic conversion privilege of the Series E Preferred Stock. This privilege can be exercised, at the option of the holder, to convert each share of the Series E Preferred Stock into a fraction of a share of Stone's common stock. Section 6($l$) provides that, in certain circumstances, this right to receive Stone common stock on conversion shall be transformed into the right to receive other securities or property. It provides as follows:

If any of the following shall occur, namely: (i) any reclassification or change of outstanding shares of the Common Stock issuable upon conversion of shares of the Series E Preferred Stock (other than a change in par value, or from par value to no par value, or from no par value to par value, or as a result of a subdivision or combination), (ii) any consolidation or merger to which the Corporation is a party other than a merger in which the Corporation is the continuing corporation and which does not result in any reclassification of, or change (other than a change in name, or par value, or from par value to no par value, or from no par value to par value, or as a result of a subdivision or combination) in, outstanding shares of the Common Stock or (iii) any sale or conveyance of all or substantially all of the property or business of the Corporation as an entirety, *then the Corporation*, or such successor

1. The closeness of the date set for the stockholder merger leaves me little time to undertake a comprehensive analysis of the issues in this matter. Nevertheless, my decision addresses the arguments emphasized by the plaintiffs and provides as thorough an analysis as possible.

2. Count I of plaintiffs' complaint seeks injunctive and declaratory relief determining that Stone has violated the Series E Preferred Stock Certificate of Designation by not yet holding a special meeting to elect two additional members to the Stone board of directors and an order mandating the scheduling of such a meeting. The parties have agreed that this issue will be litigated separately at a later date.

or purchasing corporation, as the case may be, *shall, as a condition precedent to such* reclassification, change, consolidation, *merger,* sale or conveyance, *provide in its certificate of incorporation* or other charter document *that each share of the Series E Preferred Stock shall be convertible into the kind and amount of shares of capital stock and other securities and property (including cash) receivable upon such* reclassification, change, consolidation, *merger,* sale or conveyance by a holder of the number of shares of the Series E Preferred Stock immediately prior to such reclassification, change, consolidation, merger, sale or conveyance.

(emphasis added). Plaintiffs also rely on two other clauses of Section 6(*l*), which provide as follows:

Such certificate of incorporation or other charter document shall provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 6.

and

If, in the case of any such consolidation, merger, sale or conveyance, the stock or other securities and property (including cash) receivable thereupon by a holder of the Common Stock includes shares of capital stock or other securities and property of a corporation other than the successor or purchasing corporation, as the case may be, in such consolidation, merger, sale or conveyance, then the certificate of incorporation or other charter document of such other corporation shall contain such additional provisions to protect the interests of the holders of shares of the Series E Preferred Stock as the Board of Directors shall reasonably consider necessary by reason of the foregoing.

Certificate, Article Fourth, Section 6(*l*).[3]

The Series E Preferred Stock, as a general matter, is not voting stock. Section 9

of Article Fourth governs the limited contractual voting rights of those shares, providing as follows:

In addition to any other rights provided by applicable law, so long as any shares of the Series E Preferred Stock are outstanding, the Corporation shall not, without the affirmative vote, or the written consent as provided by law, of the holders of at least two-thirds (2/3) of the outstanding shares of the Series E Preferred Stock, voting separately, ... (b) change the preferences, rights or powers with respect to the Series E Preferred Stock so as to affect the Series E Preferred Stock adversely.

Certificate, Article Fourth, Section 9.

Article Eighth of the Certificate specifies a requirement for a supermajority vote needed to authorize any merger between Stone and another corporation, and provides:

In addition to any other votes which may be required pursuant to this Restated Certificate of Incorporation, the General Corporation Law of the State of Delaware or otherwise, the affirmative vote of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the voting power of the Voting Stock shall be required to authorize (a) any merger or consolidation of the Corporation with or into any other corporation.

Certificate, Article Eighth.

Plaintiffs also raise claims involving several proposed amendments to the Certificate and the SSCC certificate. The first proposed amendment to the Certificate would grant the Series E Preferred Stock the same voting rights as the Stone common stock. Currently, the Certificate provides:

[T]he holders of shares of the Series E Preferred Stock shall not be entitled to vote on any matter on which the holders of any voting securities of the Corporation shall be entitled to vote.

3. All further references to Article Fourth of the Certificate are to Subpart I.B. thereof.

Certificate, Article Fourth, Section 4(a). This provision, as amended, would read:

[T]he holders of shares of the Series E Preferred Stock shall be entitled to vote upon all matters upon which holders of the Common Stock have the right to vote and be entitled to one vote thereon per share of Series E Preferred Stock ... with the holders of the Series E Preferred Stock and the Common Stock voting together as one class on any such matters, except as otherwise provided by law.

Post-merger amended Certificate, Article Fourth, Section 4(a). This amendment is being proposed in order to assure the tax-free nature of the merger to the common stockholders. It will be voted on at the November 17th meeting and, if approved, will become effective by filing the appropriate certificate of amendment with the Delaware Secretary of State immediately before the merger becomes effective. Thus, it is not proposed that this amendment will enfranchise the holders of the Series E Preferred Stock in connection with the proposed merger.

The second amendment to the Certificate involves numerous changes to the rights associated with the Series E Preferred Stock conversion privilege as set out in Section 6. The proposed amendment to Section 6(e) is particularly relevant. Section 6(e) presently provides:

The Corporation shall reserve and shall at all times have reserved out of its authorized but unissued shares of the Common Stock enough shares of the Common Stock to permit the conversion of the then outstanding shares of the Series E Preferred Stock. All shares of Common Stock which may be issued upon conversion of shares of the Series E Preferred Stock shall be validly issued, fully paid and nonaccessible. In order that the Corporation may issue shares of the Common Stock upon conversion of shares of the Series E Preferred Stock, the Corporation will endeavor to comply with all applicable Federal and State securities laws and will endeavor to list such shares of the Common Stock to be issued upon conversion on each securities exchange on which the Common Stock is listed.

Certificate, Article Fourth, Section 6(e). As amended, this provision would state:

The certificate of incorporation of SSCC, as amended, requires SSCC to make available to the Corporation and to reserve and at all times have reserved out of its authorized but unissued shares of SSCC Common Stock enough shares of SSCC Common Stock to permit the conversion of the then outstanding shares of the Series E Preferred Stock and to take all action necessary so that all shares of SSCC Common Stock which may be issued upon conversion of shares of the Series E Preferred Stock shall be validly issued, fully paid and nonaccessible. In order that the Corporation may deliver shares of SSCC Common Stock upon conversion of shares of the Series E Preferred Stock, the Corporation will endeavor to comply with all applicable Federal and State securities laws and will endeavor to cause SSCC to list such shares of SSCC Common Stock to be issued upon conversion on each securities exchange on which SSCC Common Stock is listed.

Post-merger Certificate, Article Fourth, Section 6(e). In conjunction with the amendment of Section 6(e) of the Certificate, the SSCC certificate would also be amended to provide post-merger:

As and when Stone Container Corporation, a Delaware corporation ("Stone"), is required to deliver shares of Common Stock (or other securities of the Corporation, if applicable), upon conversion of shares of Stone's Series E Cumulative Convertible Exchangeable Preferred Stock ... in accordance with Section 6 of Subpart I.B. of Stone's Restated Certificate of Incorporation, as amended ... the Corporation shall make available to Stone sufficient shares of Common Stock (or other securities and property

of the Corporation, if applicable) to permit Stone to satisfy such conversion requirements.

Having set forth the background of this action, I now turn to my discussion of the merits.

## II. DISCUSSION

### A. Standard

■ A preliminary injunction is appropriate when this Court finds that: (1) plaintiffs have a reasonable probability of success on the merits, (2) plaintiffs will suffer irreparable harm if their rights are violated, and (3) the balance of equities is in plaintiffs' favor. *See Kaiser Aluminum Corp. v. Matheson,* Del.Supr.; 681 A.2d 392, 394 (1996).

### B. Analysis of Plaintiffs' Claims

I address three arguments made by plaintiffs. First, does the amendment to Section 4(a) of the Certificate entitle plaintiffs to a vote in the Stone/JSC/Sub merger? Second, is this merger of the type contemplated by Section 6(*l*) of the Certificate requiring the proposed amendment to Section 6 of the Certificate making the shares of Series E Preferred Stock convertible into shares of SSCC? Third, if the merger is of a type properly requiring the amendment of Section 6, has the board of directors of Stone also met the directive of Section 6(*l*) that requires it to ensure that the SSCC charter contain such additional provisions to protect the interests of the Series E Preferred Stock as the board "shall reasonably consider necessary?"

*1. Does the amendment to Article Fourth, Section 4(a) of the Certificate entitle plaintiffs to a vote in the Stone/ JSC/Sub merger?*

In addition to voting on the merger, the common shareholders of Stone will also

vote on the proposed amendment to Section 4(a). This provision, as amended, will read:

> [T]he holders of shares of the Series E Preferred Stock shall be entitled to vote upon all matters upon which holders of the Common Stock have the right to vote and be entitled to one vote thereon per share of Series E Preferred Stock, ... with the holders of the Series E Preferred Stock and the Common Stock voting together as one class on any such matters, except as otherwise provided by law.

If approved, the amendment will be filed with the Delaware Secretary of State just prior to the Certificate of Merger being filed. The purpose for this amendment is to ensure tax-free treatment of the receipt in the merger of SSCC common stock in exchange for the Stone common stock.[4]

Plaintiffs argue that "once the amendment to Section 4 granting the Series E Preferred voting rights is filed, that stock will become 'Voting Stock' prior to the merger. Therefore, the two-thirds vote of all Voting Stock which Article Eighth of Stone's Certificate makes a prerequisite to a merger must include the Series E Preferred ." In other words, plaintiffs argue that because the Series E Preferred Stock will become voting stock before the merger becomes effective (but after the vote is taken to approve the merger) the Stone charter requires that they be allowed to vote (with the other voting stock) on the merger proposal.

■ This argument is clearly contrary to the statutory scheme for determining what shares are entitled to vote at a meeting. Section 212(a) of the Delaware General Corporation Law ("DGCL") states:

> Unless otherwise provided in the certificate of incorporation and subject to

4. Plaintiffs do not argue that Section 9(b) requires a class vote on this amendment. Section 9(b) acts as a limitation on the ability of the corporation to "adversely affect" any "preferences, rights or powers" of the Series

E Preferred. Clearly, the explicit grant of voting rights to a class formerly having none cannot, in any way, be interpreted as having an adverse affect on the "preferences, rights or powers" of those shares.

§ 213 of this title, each shareholder shall be entitled to [one] vote for each share of capital stock held by such stockholder.

8 DEL C. § 212(a). Section 213 states:

In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which record date shall not be more than [sixty] nor less than [ten] days before the date of such meeting.

8 DEL. C. § 213(a). The clear import of these provisions is that only holders of record of voting stock, as of the record date, are "entitled . . . to vote at the meeting."

■ The record date in this matter was fixed on September 29, 1998. Since the amendment will not be voted on until November 17, 1998, and, even if approved, will not become effective until immediately prior to the filing of the certificate of merger, the holders of Series E Preferred Stock cannot qualify as persons entitled to vote as of the record date or even as of the date of the meeting. *See* 8 DEL. C. §§ 242(b)(1); 103(d) (read in conjunction with each other to state that an amendment to a certificate of incorporation is effective, upon its filing date, once it has been approved by a majority of the stockholders entitled to vote on it and filed with the Secretary of State).

Plaintiffs rely on *TCG Securities, Inc.v. Southern Union Co.*, Del. Ch., C.A. No. 11282, Chandler, V.C., 1990 WL 7525 (Jan. 31, 1990). In my opinion, that case provides no support for their argument. *TCG* involved a proposed merger between Southern Union Company ("Southern Union") and SU Acquisition, Inc., which required, for its approval, a two-thirds vote by the outstanding preferred stockholders prior to the merger taking effect. Mem.

op. at 19. Southern Union submitted the merger to the class vote of the holders of the preferred, but stipulated that if the necessary vote was not obtained, it would redeem the preferred shares before the effective time of the merger, in accordance with their terms, thus allowing the merger to proceed on the favorable vote of the common stockholders alone. *Id.* When the vote was taken, the preferred stockholders failed to approve the merger by the necessary vote. *Id.* Southern Union then redeemed the preferred shares and proceeded to effectuate the merger (it having been approved by the common stockholders). *Id.*

TCG sued, claiming that the merger could not proceed because the preferred stockholders, voting as a class, had rejected it. *Id.* at 21. The court disagreed, finding that one of two available alternatives had to be met in order for the merger to proceed: either (1) there were no outstanding shares of preferred stock on the effective date of the merger, or (2) the required vote was obtained. *Id.* at 23. The court stated:

It is true that one must look to the record date to determine if the preferred stock was outstanding and entitled to vote at the special meeting. But the more relevant question here is whether, at the moment the merger is scheduled to take effect, shares of Southern Union's preferred stock remain outstanding and, if so, whether a supermajority of such stock has voted to approve the merger.

*Id.* Plaintiffs interpret this language to mean that "the pertinent time for assessing whether the merger had received the required authorization was at the time the merger was to be effected, not at the time of the earlier stockholder vote." To the contrary, then Vice Chancellor Chandler recognized both that the redemption of the preferred eliminated all of its voting rights and that, in any case, the determination of those entitled to vote (before the redemp-

tion) was made as of the record date. Nothing in the *TCG* opinion suggests that shares issued or empowered to vote after a record date for a meeting can be voted at that meeting.

*TCG* is consistent with the statutory mandates of the DGCL which allow only voting shares, determined as of the record date, to be voted. *Accord, Berlin v. Emerald Partners,* Del.Supr., 552 A.2d 482 (1988) (focusing on record date to determine whether a supermajority vote provision applicable and not on dates between approval of merger and date of stockholder vote). For these reasons, plaintiffs, who were not voting stockholders on the record date, are not entitled to vote on the instant merger. *See, e.g.,* 8 DEL. C. § 219(a) (officer in charge of the stock ledger of a corporation "shall prepare and make, at least 10 days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting"); 8 DEL. C. § 219(c) (stock ledger "shall be the only evidence as to who are the stockholders entitled ... to vote ... at any meeting of stockholders"); 8 DEL. C. § 251(c) ("if a majority of the outstanding stock of the corporation *entitled to vote thereon* shall be voted for the adoption of the agreement") (emphasis added).

*2. Is this merger of the type contemplated by Section 6(l) of the Certificate requiring the proposed amendment to Section 6 of the certificate and if not, does the implementation of the amendment prior to a Series E Preferred class vote on the amendment violate the protection of the Series E Preferred right established by the provision in Section 9(b)?*

Plaintiffs argue strenuously that the proposed amendment to Article Fourth, Section 6 of the Certificate to make the Series E Preferred Stock convertible into common shares of SSCC, rather than of Stone, is not required by the anti-destruction provision of that *Section.* Thus, they

contend, the proposed certificate amendment, which is to be effectuated as a result of the merger, is subject to the class vote requirement of Section 9. Because the holders of the Series E Preferred Stock are being given no vote in the merger, the argument goes, the merger must be enjoined.

The parties are in agreement that, in connection with certain defined transactions, Section 6(*l*) requires, as a condition precedent to the effectuation of such transaction, that Stone shall amend the Certificate to provide that "each share of Series E Preferred Stock shall be convertible into the kind and amount of shares of capital stock and other securities and property (including cash) receivable upon such [transaction] by a holder of the number of shares of the Common Stock deliverable upon conversion of such share of the Series E Preferred Stock immediately prior to such [transaction]." The parties also agree that, if the merger here proposed is a transaction of the sort defined in Section 6(*l*), then the proposed amendment to Section 6 is required by the quoted portion of Section 6(*l*).[5]

In pertinent part, the cited provision of Section 6(*l*) applies to "(ii) any ... merger to which [Stone] is a party *other than a merger in which the Corporation is the continuing corporation and which does not result in any reclassification of, or change* (other than a change in name, or par value, or from par value to no par value, or from no par value to par value, or as a result of a subdivision or combination) *in, outstanding shares of the Common Stock.* ... " (emphasis added). Stone is to be the surviving corporation in the merger with Sub. Thus, the issue is whether the underscored exception applies because the proposed merger will not result in "any ... change ... in outstanding shares" of Stone common stock. I conclude that the exception does not apply and, thus, Section

---

5. As discussed, *infra.* at II.B.2, pp. 14–21, plaintiffs contend that the proposed amendment to Section 6 does not adequately protect the interests of the holders of the Preferred.

6(*l*) requires an amendment to the Certificate making the Series E Preferred Stock convertible into the common stock of JSC.

■ I begin with the plain meaning of the word "change," used here as a noun. "Change" is defined in Black's Law Dictionary as follows: "[a]n alteration; a modification or addition; substitution of one thing for another." BLACK'S LAW DICTIONARY 210 (5TH ed.1979). Similarly, it is defined by Webster as: "3. The action of replacing something with something else of the same kind or with something that serves as a substitute: [substitution]." WEBSTER'S NEW INTERNATIONAL DICTIONARY 374 (3RD ed.1976). As a result of the merger, every share of the outstanding common stock of Stone will be "changed", at least in the common understanding of that word. The Merger Agreement (Section 2.01) provides that (i) each share of Stone common stock held in treasury and each outstanding share of Stone common stock owned by JSC or its wholly owned subsidiaries will be cancelled, and (ii) each other outstanding share of Stone common stock shall be converted into .99 shares of JSC common stock.[6] It seems to me incontestable that both the cancellation of certain shares and the substitution of JSC common stock for others result in a "change" in the outstanding Stone common shares, within the meaning of Section 6(*l*).

This conclusion is entirely consistent with the authorities recognizing that the purpose of an anti-destruction provision (such as the cited language from Section 6(*l*)) is to protect the value of the conversion feature of the security. *See, e.g.,* *Wood v. Coastal States Gas Corp.,* Del. Supr., 401 A.2d 932, 939 (1979) (recognizing that transactions triggering the operation of anti-destruction clauses "are the kind of events that will not merely dilute the conversion privilege by altering the number of shares of common but, rather, may destroy the conversion privilege by eliminating the stock into which a preferred share is convertible ."); R. Buxbaum, *Preferred Stock—Law and Draftsmanship,* 42 CAL. L. REV. 243, 288 (1954) (stating that the contractual terms of convertible stock usually provide, in the case of mergers and other transactions effecting the underlying security, that "upon conversion the convertible stock is entitled to the same stock and number as a holder of the [underlying stock] would have or did receive at the time of that transaction.").

This purpose would certainly fail if, as plaintiffs suggest, Stone remained free to engage in mergers in which all of its outstanding common stock was exchanged for some other property, including cash, but, simply because the common stock of Stone survived the transaction, the conversion feature of the Series E Preferred Stock was not adjusted to make those shares convertible into such other property.[7] As I construe Section 6(*l*), Stone can only engage in such transactions without adjusting the conversion rights of the Series E Preferred Stock if both (i) Stone survives the transaction, and (ii) the *outstanding* shares of Stone common stock are unchanged thereby. For instance, in the proposed merger, the outstanding shares of JSC common stock are unchanged or unaffected · by the terms of the Merger Agreement. Thus, if Stone occupied the position of JSC in this merger, no adjustment in the conversion feature of the Series E Preferred Stock would be required. By contrast, where the outstanding shares

6. Following the merger, the only shares of Stone common stock outstanding will be those newly issued in exchange for "each issued and outstanding share of capital stock" of Sub.

7. In essence, this is plaintiffs' position. If Stone is the surviving corporation, it must have common stock. Since that common stock will not have attributes different than the attributes of the common stock before the merger, it is not "changed" by the merger. Thus, plaintiffs would appear to argue in every case in which there is common stock of Stone surviving the merger (i.e., in any case in which Stone is the surviving entity), the adjustment mechanism of Section 6(*l*) will not apply.

of Stone common stock are exchanged for or converted into some other security or property in the merger, the adjustment mechanism of Section 6($l$) will apply whether or not Stone is the surviving entity in the transaction. In my opinion, this interpretation of the phrase "reclassification of, or change ... in, the outstanding shares of the Common Stock" found in Section 6($l$) is consistent with the common meaning of the words and supportive of the proper functioning of the protective provisions of Section 6($l$).

Plaintiffs rely principally on *Warner Communications, Inc. v. Chris–Craft Industries, Inc.,* in arguing that, as a matter of law, the conversion of the outstanding common stock of Stone in the merger is not a "change" in those shares. Del. Ch., 583 A.2d 962, *aff'd,* 567 A.2d 419 (1989). *Warner* did not so hold.

In *Warner,* the Court was asked to consider whether the holders of certain preferred stock were entitled to a class vote in connection with a proposed merger in which they were to receive, in exchange for their preferred stock, new preferred stock of the acquiring corporation. In the merger, the charter of the first corporation was being amended to eliminate all reference to the preferred stock. 583 A.2d at 966. The Court first found inapplicable the Warner charter provisions creating class voting rights in the case of proposals to amend, alter or repeal any provision of the certificate so as to adversely affect the preferred or its holders. *Id.* at 967. The Court reasoned that no class vote was required because "given the existence of the merger, the amendments in the certificate of incorporation can in no event themselves be said to 'affect' [the preferred holders] 'adversely.'" *Id.* at 968. That is, the amendments were essentially housekeeping details inasmuch as there would be no outstanding shares of Warner preferred after the merger.

The Court next considered whether one of those charter provisions, which required a class vote on any proposal to "alter or

change any rights [preferences or limitations] of the Preferred Stock so as to affect the holders of all such shares adversely" could be construed to require a class vote on the merger proposal. itself. *Warner,* 583 A.2d at 968. "[V]iewing the certificate of designation in its entirety," the Court concluded that there was no reasonable likelihood that the drafters intended conversion of stock in a merger to be contemplated within the phrase "alter or change any rights [preferences or limitations] ... so as to affect the holders of all such shares adversely." *Id.* at 968–69. In reaching this conclusion, the Court noted the absence of language specifically referring to the possibility of a merger— "a possibility of the most profound importance to a holder of stock with special rights or preferences." *Id.* at 969. The Court also remarked on the similarity of the wording of the provision to the language of Section 242(b)(2) of the DGCL and concluded that the drafters would not have used language so closely similar to that of Section 242(b)(2) "had they intended a merger to trigger the class vote mechanism of that section." *Id.* at 970. Essentially, *Warner* held that the conversion of the preferred in the merger into identical preferred of the resulting parent corporation did not "alter or change" any of the rights, preferences or limitations of the preferred so as to affect adversely the interests of the holders thereof. *Warner* did not conclude that the conversion of the shares of preferred outstanding at the time of the merger did not "change" those shares in the broader sense required by the language of Section 6($l$).

In my view, the issues presented and the analysis required here are quite different than in *Warner.* In this case, the pertinent language of Section 6($l$) plainly refers to the possibility of a merger. Indeed, the specific inquiry driven by the language of Section 6($l$) is whether the proposed merger will result in a change in the outstanding shares of Stone. Moreover, Section 6($l$) refers broadly to any

"change ... in, outstanding shares" of Stone common stock, whereas *Warner* examined only the vote necessary to "alter or change" any rights, preferences or limitations of the preferred stock. Finally, this case deals with a different provision than was at issue in *Warner,* and the language of that provision should not be read woodenly, by reference to decisions concerning other types of provisions, to deprive it of its intended meaning and purpose.

■ In conclusion, I hold that Section 6(*l*) requires Stone to amend its charter to make the Series E Preferred Stock convertible into shares of common stock of JSC. Further, I conclude that the proposed amendment to Section 6 intended to accomplish this purpose does not require a class vote of the holders of the preferred for its adoption, as the proposed amendment cannot be conceived of as being "adverse" to the interests of those holders, since it is affirmatively required by the terms of the Stone charter to protect their interests in the merger. *See Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 955 (5th Cir.1981) (holding that no class vote of convertible debenture holders required to approve supplemental indenture to be executed in compliance with anti-destruction provision of indenture.)

*3. Does the Merger Agreement satisfy the provision of Section 6(l) requiring that the SSCC certificate contain such additional provisions to protect the interests of the Series E class as the. Board of Directors of Stone "shall reasonably consider necessary?"*

There are two other provisions found in Section 6(*l*) on which plaintiffs appear to rely in their preliminary injunction application. First, they cite to the language immediately following that discussed above, in Part II.B.2 of this opinion, which provides that, "Such certificate of incorporation ... shall provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 6." The proposed amendment to Section 6(f) does contain provisions, which appear to be nearly identical to those presently existing, requiring adjustment to the conversion ratio to account for various transactions in relation to the SSCC. common shares, such as stock dividends or stock splits and similar occurrences. Plaintiffs do not contend that these provisions are not equivalent or nearly equivalent to those now in effect for the purpose of protecting the value of the conversion privilege of the Series E Preferred Stock. Thus, if (as seems likely) the provision is read as limited in its scope to the amendment to Stone's certificate to ensure that the anti-dilution adjustments · to the conversion ratio are applied to the conversion to SSCC stock, it would appear to be satisfied by the proposed amendment to Section 6(f).

■ Nevertheless, plaintiffs rely on the quoted language to imply a broad obligation to introduce new protections designed to counter what they see as the potentially negative economic ramifications of Stone becoming a wholly owned subsidiary of SSCC. For example, plaintiffs point to the fact that there is, and will continue to be, a provision in Section 2(b) of the Certificate prohibiting the payment of any dividend on the Stone common stock if the Series E Preferred Stock is in arrears. They complain that there is .no similar prohibition on the payment of dividends on SSCC common stock. This may be true, but I am unable to conclude at this time, even preliminarily, that the cited language is broad enough to create a contractual duty to create additional dividend protections, or that a provision barring SSCC from paying dividends on its common stock would be reasonably required even if the language were given a broader interpretation than seems likely. *See Rosan v. Chicago Milwaukee Corp.,* Del. Ch., C.A. No. 10526, Chandler, V.C., mem. op. at 16, 1990 WL 13482 (Feb. 6, 1990); *Jedwab v. MGM Grand Hotels, Inc.,* Del. Ch., 509 A.2d 584, 594 n. 6 (1986).

Second, plaintiffs cite to the penultimate sentence of Section 6(*l*) which, it is agreed in this case, requires the certificate of incorporation of SSCC to "contain such additional provisions to protect the interests of the holders of shares of the Series E Preferred Stock as the Board of Directors shall reasonably consider necessary by reason of the foregoing." Plaintiffs refer to this provision, rhetorically, as the "Additional Protections Requirement" and argue, for a variety of reasons, that Stone has breached the contractual duty thereby created. Defendants argue that the duty thus created is limited to the protection of the conversion rights of the Series E Preferred Stock, which is the only subject addressed in the other clauses of Section 6(*l*).

Several of the matters plaintiffs allege to breach this clause of Section 6(*l*) do touch upon or concern the protection of the conversion rights of the Series E Preferred. Among other things, plaintiffs complain that the proposed amendment to Section 6(e) of the Certificate and proposed Article Fifth of the SSCC charter will not oblige SSCC to deliver validly issued, fully paid and non-assessable shares, nor will they oblige SSCC to register such shares under the Securities Act of 1933, obligations now imposed on Stone by Section 6(e).[8] Similarly, plaintiffs complain that there is no mechanism provided in these proposals to give them enforceable rights under Article Fifth of the SSCC charter or to require their vote as a class on any proposal to eliminate that provision.[9]

Other matters alleged by plaintiffs to violate what they call the "Additional Protections Requirement" of Section 6(*l*) do not relate at all to the conversion rights of the Series E Preferred Stock. For example, plaintiffs complain that dividend and liquidation preferences of those shares will be impaired by the economic consequences of the merger. Similarly, they complain that, because all effective decision making will be shifted to the SSCC level, they will lose the practical benefit of the certain voting and related rights under the Certificate.

In *Elliott Associates, L.P. v. Avatex Corporation*, in discussing the proper mode of analysis for construing the terms of preferred stock, the Supreme Court stated:

> Th[e] Court's function is essentially one of contract interpretation against the background of Delaware precedent. These precedential parameters are simply stated: Any rights, preferences and limitations of preferred stock that distinguish that stock from common stock must be expressly and clearly stated, as provided by statute. Therefore, these

---

8. The proposed amendment to Section 6(e) of the *Stone certificate of incorporation* states that *SSCC* is required "to reserve and at all times have reserved out of its authorized but unissued shares of SSCC Common Stock enough shares of SSCC Common Stock to permit the conversion of the then outstanding shares of the Series E Preferred Stock and to take all action necessary so that all shares of SSCC Common Stock which may be issued upon conversion of shares of the Series E Preferred Stock shall be validly issued, fully paid and nonaccessible" and that Stone "will endeavor to cause SSCC to list such shares ... on each securities exchange," *but the proposed SSCC certificate* contains only the language that "[a]s and when [Stone] is required to deliver shares of Common Stock ... upon conversion of shares of Stone's [Series E Preferred] ... [SSCC] shall make available to Stone sufficient shares of Common Stock to

permit Stone to satisfy such conversion requirements," and "[i]n addition, [SSCC] shall take any and all action contemplated to be taken by [SSCC] when, as and if required pursuant to the provisions of [Article Fourth] of Section 6 ... [of Stone's certificate], as the case may be."

9. I note, that Section 242(b) of the DGCL appears to contemplate that only stockholders of the corporation may have the right to vote upon proposed charter amendments. Thus, it is unclear if Section 6(*l*) could be interpreted to require that the SSCC charter require that the holders of the Series E Preferred Stock be given a class vote on any proposal to amend or repeal Article Fifth thereof. Of course, it is possible that SSCC could, by contract, agree not to amend a provision of its charter. I do not reach any of these issues at this time.

rights, preferences and limitations will not be presumed or implied.

Del.Supr., 715 A.2d 843, 852–53 (1998) (citing *Rothschild Int'l Corp. v. Liggett Group Inc.*, Del.Supr., 474 A.2d 133, 136 (1984) ("Preferential rights are contractual in nature and therefore are governed by the express provisions of a company's certificate of incorporation. Stock preferences must also be clearly expressed and will not be presumed.")).

Applying this standard to the final clause of Section 6(*l*) leads me to two conclusions. First, I am unable on the record before me to conclude that plaintiffs are likely to prevail in arguing that this clause can be construed to refer to subjects other than the conversion rights of the Series E Preferred Stock. Indeed, the expansive reading given to it by plaintiffs to create a broad contractual duty to protect the Series E Preferred Stock from all foreseeable economic consequences of the merger strongly suggests to me that the duty must be limited in scope to the right of conversion. Those broader consequences were known or knowable at the time the preferred was issued and could have been—but were not—made the subject of specific contractual duties. Second, I am unable to conclude on the record before me that plaintiffs are likely to prevail in arguing that the issues raised by them relating to the issuance and registration of the SSCC shares upon conversion are sufficiently material to amount to a

breach of contract. In this regard, I note that the contractual obligation allegedly beached—requiring only that SSCC's certificate of incorporation contain "such additional provisions to protect the interests of the holders of shares of the Series E Preferred Stock as the Board of Directors shall reasonably consider necessary by reason of the foregoing"—does not specify what is required, and is not readily or easily enforced by injunction. At least in this case, where the Merger Agreement does provide some substantial protection in SSCC's charter, this lack of specificity precludes a finding of probability of success on the merits of the application.[10]

## C. Other Matters

■ Finally, I am unpersuaded that the issues plaintiffs raise in relation to the so-called "Additional Protections Requirement" cannot be addressed effectively by way of final relief, should plaintiffs ultimately prevail on the merits.[11] In any event, those issues do not seem to me to raise sufficiently serious issues of imminently threatened irreparable harm to justify the use of this Court's preliminary injunctive powers to block the merger. Unlike a claimed right to vote in on merger, which cannot be remedied once the merger has been accomplished, it would appear to be possible to adjust matters after the fact to remedy the matters about which plaintiffs complain.[12]

10. I note that plaintiffs raise claims that are entirely contractual in nature and do not raise fiduciary duty based claims regarding the terms of the merger to the preferred holders. *See* 1 DAVID A. DREXLER ET AL., DELAWARE CORPORATION LAW AND PRACTICE § 15.13 (1998) ("Preferred stockholders are, after all, stockholders to whom is owed the same loyalty and care owed to common stockholders."). *See also Dalton v. American Inv. Co.*, Del. Ch., 490 A.2d 574, *aff'd*, Del.Supr., 501 A.2d 1238 (1985) (raising issue of breach of fiduciary duties); *Judah v. Delaware Trust Co.*, Del. Supr., 378 A.2d 624 (1977) (raising issue of board's proper exercise of its fiduciary duties); *Dart v. Kohlberg, Kravis, Roberts & Co.*, Del. Ch., C.A. No. 7366, Hartnett, V.C., 1985 WL 11566 (June 25, 1985) (finding puta-

tive breach of fiduciary duty to preferred stockholder).

11. At the argument on this motion, Stone submitted for my consideration a recently filed Form S–3 in which SSCC expressed a commitment to deliver registered, fully paid and nonaccessible shares to Stone whenever holders of the Series E Preferred Stock present shares for conversion. At a minimum, this suggests the availability of remedies other than an injunction against the merger.

12. It is appropriate to note that plaintiffs' application for injunctive relief is subject to a substantial argument that it is barred by the doctrine of laches. Because my ruling rests on other reasoning, I make no definitive deci-

## III. CONCLUSION

For all of the foregoing reasons, plaintiffs' request for preliminary injunctive relief in this matter is DENIED. IT IS SO ORDERED.

sion as to whether the doctrine of laches is, or is not, applicable. *See Kallop v. McAllister,* Del.Supr., 678 A.2d 526, 532 (1996) (laches is shown where the plaintiff had knowledge of the alleged claim, delayed unreasonably in its actions and this delay detrimentally affected the defendant). However, I do note that had plaintiffs raised their claims in May of 1998, when the Merger Agreement was publicly filed and the basic terms of the merger publicly announced, there would have been a much fuller opportunity for them to present and for the court to consider their claims.