## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT LEWIS and ANDREW FRIEDMAN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 9934-VCP |
| AIMCO PROPERTIES, L.P., CONCAP EQUITIES, INC., CENTURY PROPERTIES FUND XVII, LP, ANGELES PARTNERS XII, LP, CONSOLIDATED CAPITAL INSTITUTIONAL PROPERTIES/3, LP, CONSOLIDATED CAPITAL PROPERTIES IV, LP, ANGELES REALTY CORPORATION II, FOX CAPITAL MANAGEMENT CORPORATION, TERRY CONSIDINE, STEVEN D. CORDES, and JOHN E. BEZZANT, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: January 14, 2015
Date Decided: February 10, 2015

Norman M. Monhait, Esq., Carmella P. Keener, Esq., P. Bradford deLeeuw, Esq., ROSENTHAL, MONHAIT & GODDESS, P.A., Wilmington, Delaware, Lionel Z. Glancy, Esq., Kara M. Wolke, Esq., Louis N. Boyarsky, Esq., GLANCY BINKOW & GOLDBERG LLP, Los Angeles, California; Jeffrey S. Abraham, Esq., Lawrence D. Levit, Esq., ABRAHAM, FRUCHTER & TWERSKY, LLP, New York, New York; *Attorneys for Plaintiffs*.

Paul J. Lockwood, Esq., Ronald N. Brown, III, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Attorneys for Defendants*.

**PARSONS, Vice Chancellor.**

Before the Court is a motion by one group of the defendants to dismiss the claims against them for lack of subject matter jurisdiction, and a motion by a second group of the defendants to dismiss the claims against them for failure to state a claim upon which relief could be granted. I have considered the parties' briefing and arguments, and the relevant documents as to those motions. For the reasons stated in this Memorandum Opinion, I grant both motions in large part. In particular, I order the Complaint stayed pending arbitration as it relates to the first set of moving defendants. As to the second group, I grant the motion to dismiss.

## I.  BACKGROUND[1]

### A.  The Parties

Plaintiffs, Robert Lewis and Andrew Friedman, are holders of limited partnership units in four Delaware limited partnerships, which together are the "Limited Partnership or LP Defendants": (1) Angeles Partners XII, LP ("AP XII"); (2) Century Properties Fund XVII, LP ("CPF XVII"); (3) Consolidated Capital Institutional Properties/3 LP ("CCIP/3"); and (4) Consolidated Capital Properties IV, LP ("CCP IV"). The LP Defendants were formed to own and operate residential real estate properties. Each of the LP Defendants had a corporate entity as its general partner, and each of those general partners was indirectly owned by non-party Apartment Investment and Management Company ("AimCo"), a publicly traded Maryland Real Estate Investment Trust or REIT. AimCo also indirectly held a majority of the limited partnership units in each of the LP

---

[1]     Except as otherwise noted, all facts recited herein are drawn from the well-pled allegations of Plaintiffs' Verified Class Action Complaint (the "Complaint").

1

Defendants. The Plaintiffs are minority owners of the limited partnership units not owned by AimCo.

As relevant here, AimCo has three subsidiaries that also are named Defendants: (1) ConCap Equities, Inc. ("ConCap"), a Delaware corporation; (2) Angeles Realty Corporation II ("ARC II"), a California corporation; and (3) Fox Capital Management Corporation ("FCMC"), also a California corporation. ConCap is the managing general partner of LP Defendants CCIP/3 and CCP IV. ARC II and FCMC are the managing general partners, respectively, of LP Defendants AP XII and CPF XVII. Together, ConCap, ARC II, and FCMC are the "General Partner or GP Defendants."

Defendant Aimco Properties, L.P. ("Aimco OP") is a Delaware limited partnership and an affiliate of AimCo. Defendants John E. Bezzant and Steven D. Cordes are officers of AimCo and also officers and directors of ARC II and FCMC. Bezzant, but not Cordes, additionally is an officer and director of ConCap. Defendant Terry Considine is an officer of AimCo.

### B.    The Mergers

On July 28, 2011, AimCo announced the "Mergers" that gave rise to this action, and filed Schedule 13e-3 and Form S-4 documentation with the Securities and Exchange Commission ("SEC"). Through the Mergers, the LP Defendants were merged into a subsidiary of Aimco OP. The Mergers were executed without a separate vote from the unaffiliated, minority unitholders of the LP Defendants, including Plaintiffs. In the Complaint, Plaintiffs allege that the Mergers amounted to freeze-out transactions in which they received insufficient consideration for their units in the LP Defendants. In

2

particular, they aver that AimCo relied on faulty appraisals that unfairly undervalued the LP Defendants and the real estate assets they owned, and therefore prevented Plaintiffs from being able to assess the true value of their limited partnership units. Plaintiffs also charge Defendants with allowing certain of the Properties held by the LP Defendants to fall into disrepair so that their appraised value would be depressed even further.

## C. Parties' Contentions

Plaintiffs filed their Complaint on July 23, 2014, asserting a single cause of action for breach of fiduciary duty against the "AimCo Defendants," which includes the GP Defendants, Aimco OP, Bezzant, Cordes, and Considine.[2] They purport to sue on behalf of a class of all minority or unaffiliated unitholders in the four LP Defendants. Plaintiffs assert that the Mergers were self-dealing transactions that were not entirely fair in terms of either price or process. They seek damages in an as-yet undetermined amount.

ConCap, CCIP/3, and CCP IV (together with Bezzant, the "ConCap Defendants") seek dismissal of the Complaint as it pertains to them, contending that this Court lacks subject matter jurisdiction because the relevant Partnership Agreements governing CCIP/3 and CCP IV contain broad, mandatory arbitration clauses. Bezzant also requests a partial dismissal of the Complaint to the extent it relates to his role as a director of ConCap, for the same reason.[3]

---

[2] Compl. ¶ 17.

[3] To the extent that Bezzant conceivably might have been in a different position than ConCap, CCIP/3 and CCP IV in this regard, by virtue of whether or not he is a party to the limited partnership agreements containing the operative arbitration provisions, the Complaint does not plead facts as to that issue, nor was it briefed

3

Aimco OP and Considine moved separately to dismiss the Complaint in its entirety as it relates to them for failure to state a claim upon which relief could be granted. In support of that motion, they contend that neither Aimco OP nor Considine owed fiduciary duties to Plaintiffs, and therefore the claim for breach of fiduciary duties against them must be dismissed.

## II.   CONCAP DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1)

### A.   Legal Standard

The Court of Chancery will dismiss an action under Rule 12(b)(1) "if it appears from the record that the Court does not have subject matter jurisdiction over the claim."[4] The plaintiff "bears the burden of establishing this Court's jurisdiction, and where the plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, he must support those allegations with competent proof."[5] "A motion to dismiss based on an arbitration clause is properly brought under Court of Chancery Rule 12(b)(1). The burden of establishing the court's subject matter jurisdiction rests with the party seeking the Court's intervention."[6]

---

or argued. Any such argument, therefore, has been waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).

[4]   *AFSCME Locals 1102 & 320 v. City of Wilm.,* 858 A.2d 962, 965 (Del. Ch. 2004) (citation omitted).

[5]   *Yancey v. Nat'l Trust Co.,* 1993 WL 155492, at *6 (Del. Ch. May 7, 1993) (citation omitted).

[6]   *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 882 (Del. Ch. 2008) (internal quotation marks omitted).

4

## B. The Arbitrator, Not this Court, Should Decide Substantive Arbitrability Here

In support of their contention that the Complaint should be dismissed as it relates to them, the ConCap Defendants rely on the following language, which appears in identical clauses in the limited partnership agreements for CCIP/3 and CCP IV:

> Any dispute or controversy arising under, or out of, or in connection with or in relation to this Agreement and any amendments thereof, or the breach thereof, or in connection with the dissolution of the Partnership, shall be determined and settled by arbitration to be held in Oakland, California, in accordance with the rules then applicable of the American Arbitration Association.[7]

Although the parties did not address this issue in any detail, I assume that the Federal Arbitration Act ("FAA")[8] governs my consideration of the ConCap Defendants' motion.[9] The Delaware Supreme Court has recognized that "the public policy of

---

[7] Opening Br. in Supp. of Aimco Props., L.P.'s and Terry Considine's Mot. to Dismiss ("DOB") Ex. E at A-20; *id*., Ex. I at A-24 [together, hereinafter the "Arbitration Clauses"].

[8] 9 U.S.C.A. §§ 1–16.

[9] In this regard, I note that, pursuant to 10 *Del. C.* § 5702, unless an arbitration agreement complies with the standard set forth in Section 5702(a) by "specifically referencing the Delaware Uniform Arbitration Act ["DUAA"] . . . and the parties' desire to have it apply to their agreement," Section 5702(c) provides that "any application to the Court of Chancery to enjoin or stay an arbitration, obtain an order requiring arbitration, or to vacate or enforce an arbitrator's award shall be decided by the Court of Chancery in conformity with the [FAA], and such general principles of law and equity as are not inconsistent with that Act."

Those provisions in Section 5702 were adopted as part of an amendment dated April 2, 2009, and became effective July 2, 2009. *See* 79 Del. Laws ch. 8, §§ 2-3 (2009). The limited partnership agreements for CCIP/3 and CCP IV, however, predate that amendment, having been executed originally in 1983 and 1981,

5

Delaware favors arbitration," and that the question of substantive arbitrability, which considers "whether the parties agreed to arbitrate[,] is generally one for the courts to decide and not for the arbitrators."[10] The threshold question of "who has the primary power to decide arbitrability," however, "turns upon what the parties agreed about that matter."[11] Under the Supreme Court's holding in *James & Jackson, LLC v. Willie Gary*, where there is "clear and unmistakable evidence" that the parties agreed to submit the issue of substantive arbitrability to the arbitrator, the courts should defer to that manifestation of intent.[12] Cases applying that standard have found it to be met where the arbitration clause at issue "generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[13]

The Arbitration Clauses in the limited partnership agreements for CCIP/3 and CCP IV provide for arbitration of "[a]ny dispute or controversy arising under, or out of,

---

respectively. *See* DOB Ex. E at A-3; *id.* Ex. I at A-3. The limited partnership agreements for CCIP/3 and CCP IV, however, were amended most recently in 2011. *See* DOB Exs. H., L. Thus, it potentially could be the case that 10 *Del. C.* 5702 should apply as amended, and, because none of the Arbitration Clauses reference the DUAA, the FAA governs my consideration of this dispute. Even if Section 5702, as amended, does not apply, however, the same result would obtain, because the relevant agreements here involve interstate commerce. *See, e.g.*, *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006) (citing *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273–74 (1995)).

[10] *Willie Gary*, 906 A.2d 76, 79 (Del. 2006).

[11] *Id*.

[12] *Id*.

[13] *McLaughlin v. McCann*, 942 A.2d 616, 623 (Del. Ch. 2008) (quoting *Willie Gary*, 906 A.2d at 80).

or in connection with or in relation to this Agreement . . . ." That broadly written language easily satisfies the test articulated in cases like *Willie Gary* and *McLaughlin v. McCann*. The Court in *McLaughlin* found that arbitrability was to be decided by the arbitrator because the arbitration clause there provided "for arbitration of a wide array of potential claims."[14] Here, the Arbitration Clauses provide for the widest array of potential claims—that is, "[a]ny dispute or controversy arising under, or out of, or in connection with or in relation to this Agreement . . . ."

Moreover, the Arbitration Clauses provide that the arbitration will be conducted "in accordance with the rules then applicable of the American Arbitration Association." In this regard, I note that the AAA Commercial Arbitration Rules state that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[15] In these circumstances, there is "a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability."[16]

The terms of the Arbitration Clauses, therefore, clearly and unmistakably suggest that the parties agreed, as a threshold matter, that arbitrability would be decided by the

---

[14]    *Id*. at 626.

[15]    AAA Commercial Arbitration Rules R-7.

[16]    *McLaughlin*, 942 A.2d at 625.

arbitrator. The FAA "requires that upon application of a party to a suit brought in court, the court shall stay the court proceeding 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration' under an arbitration agreement."[17] I therefore will stay the Complaint as it pertains to the ConCap Defendants.[18]

In arguing for a contrary conclusion, Plaintiffs cite cases for the proposition that Courts, not arbitrators, should decide the question of substantive arbitrability. Those cases, however, address only a preliminary presumption and predate the Supreme Court's directives in *Willie Gary*, which apply squarely to the circumstances in this case.

Plaintiffs also contend that their claims for breach of fiduciary duties are not included in the claims to be arbitrated, because "fiduciary duty claims are inherent in Delaware law and do not arise from the Partnership Agreements."[19] They similarly argue that claims like these, which relate to a "merger," are not within the scope of the applicable Arbitration Clauses. Even if I were to assume there may be merit to Plaintiffs' arguments in this regard, however, they go to the issue of substantive arbitrability—

---

[17]     *Id.* at 621 (citing 9 U.S.C.A. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.")).

[18]     *See id.*

[19]     Pls.' Brief in Opposition to Aimco Props. L.P.'s and Terry Considine's Mot. to Dismiss ("PAB") 8.

8

whether the parties agreed to arbitrate claims like the ones presented—and, as noted above, that issue in this case must be decided by the arbitrator. Therefore, I will stay the Complaint's claims against the ConCap Defendants. Those claims must be submitted to arbitration in accordance with the Arbitration Clauses.

## III. CONSIDINE AND AIMCO OP'S RULE 12(b)(6) MOTION TO DISMISS

### A. Legal Standard

This Court will deny a motion to dismiss under Rule 12(b)(6) "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible to proof."[20] In determining whether the Complaint meets this pleading standard, this Court will draw all reasonable inferences in favor of Plaintiffs, "accept all well-pleaded factual allegations in the Complaint as true, [and] accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim."[21] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[22]

### B. Aimco OP and Considine Did Not Control the LP Defendants or Owe Fiduciary Duties to those LPs or Their Limited Partners, including Plaintiffs.

Aimco OP and Considine seek dismissal of the claims against them, contending that Plaintiffs have failed to allege facts from which this Court could conclude that

---

[20] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC,* 27 A.3d 531, 536 (Del. 2011).

[21] *Id.*

[22] *Price v. E.I. duPont de Nemours & Co., Inc.,* 26 A.3d 162, 166 (Del. 2011).

9

Aimco OP and Considine owed fiduciary duties to Plaintiffs. "A fiduciary relationship exists where one party places a special trust in another and relies on that trust, or where a special duty exists for one party to protect the interests of another. It generally requires 'confidence reposed by one side and domination and influence exercised by the other.'"[23]

In *In re USACafes, L.P. Litigation*,[24] Chancellor Allen considered whether limited partners of USACafes, L.P., could sue the individuals who served as directors of USACafes General Partner, Inc., its corporate general partner, for breach of fiduciary duty related to the disposition of the Limited Partnership's property. The Chancellor held that "[t]he theory underlying fiduciary duties is consistent with recognition that a director of a corporate general partner bears such a duty towards the limited partnership."[25] In later cases involving limited partnerships, "this Court has followed *USACafes* consistently, holding that the individuals and entities who control the general partner owe to the limited partners at a minimum the duty of loyalty identified in *USACafes*."[26] This Court's decisions also have extended the doctrine to other alternative entities, such as

---

[23]     *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624–25 (Del. Ch. 2005) (internal citations and quotation marks omitted), *aff'd in part, rev'd in part*, 901 A.2d 106 (Del. 2006).

[24]     600 A.2d 43 (Del. Ch. 1991).

[25]     *Id*. at 49.

[26]     *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 670–71 (Del. Ch. 2012) (internal citations omitted) (citing *Gelfman v. Weeden Investors, L.P.*, 792 A.2d 977, 992 n.24 (Del. Ch. 2001); *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 795 A.2d 1, 34 (Del. Ch. 2001), *aff'd in part, rev'd in part*, 805 A.2d 882 (Del. 2002)).

10

LLCs and statutory trusts, while noting the tension the doctrine reflects between corporate separateness and the application of fiduciary principles.[27]

I am guided by cases like *USACafes* in deciding Aimco OP and Considine's motion to dismiss under Rule 12(b)(6). For the following reasons, I conclude that, taking all non-conclusory factual allegations in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, it is not reasonably conceivable that Plaintiffs could prevail on a claim for breach of fiduciary duty against either Aimco OP or Considine.

### 1. Aimco OP did not owe fiduciary duties to the LP Defendants or to Plaintiffs

With respect to Aimco OP, Plaintiffs assert that it "controlled" the LP Defendants and exercised that control to acquire the unaffiliated minority interests held by the limited partners.[28] The allegations in the Complaint that Plaintiffs cite as support of that contention, however, fall short of raising a reasonable inference that the LP Defendants were "subject to the direction and control of both Aimco OP and its directors and officers, including Considine."[29]

Somewhat confusingly, the Complaint speaks about "control" of the LP Defendants in the sense of majority ownership of those entities. The Complaint alleges, however, that non-party AimCo, the REIT, owned the majority stake in the LP

---

[27]  *Feeley*, 62 A.3d at 670-71.

[28]  PAB 16.

[29]  *Id.*

11

Defendants, *not* Aimco OP.[30] This fact is not altered by Plaintiffs' less precise assertion that "AimCo *and its affiliates, which included Aimco OP*, owned a majority of each limited partnership."[31] Plaintiffs' reasoning appears to be that: AimCo owned majority stakes in the LP Defendants through its affiliates; Aimco OP is an affiliate of AimCo; therefore, Aimco OP may be liable for a breach of fiduciary duty as to one of the LP Defendants.

Underlying this proposition is a misplaced invocation of the concept in corporate law that a majority or controlling stockholder owes fiduciary duties to the corporation and its minority stockholders.[32] The fundamentally different nature of limited partnerships renders Plaintiffs' overly simplistic argument in this regard unavailing. Delaware limited partnerships, such as the LP Defendants, are subject to the Delaware Revised Uniform Limited Partnership Act ("DRULPA").[33] The policy of DRULPA is "to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements."[34] A general partner of a limited partnership generally has rights and powers to manage and control the business and affairs of the limited

---

[30] Compl. ¶¶ 1, 6–9.

[31] PAB 16 (emphasis added).

[32] *See, e.g.*, *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994) ("This Court has held that 'a shareholder owes a fiduciary duty only if it owns a majority interest in or *exercises control* over the business affairs of the corporation.'") (quoting *Ivanhoe P'rs v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)).

[33] 6 *Del. C.* §§ 17-101 to -1111.

[34] *Id*. § 17-1101(c).

12

partnership.[35]  It is not uncommon, however, for the general partner to have a small ownership stake in the limited partnership.[36]  By contrast, a limited partner may have a large or even a majority ownership interest in the limited partnership, but, by design, that limited partner would not have any power to manage or control the business and affairs of the partnership.  Otherwise, that partner could be subject to liabilities.  Thus, the fact that AimCo, through its affiliates, may have a majority interest in the LP Defendants does not support a reasonable inference that AimCo, or its affiliate Aimco OP, had a fiduciary duty to those limited partnerships or their limited partners.[37]

Plaintiffs also contend that Aimco OP owed fiduciary duties to the limited partners of the LP Defendants because it exercised control over those entities.[38]  This appears to

---

[35]  *See, e.g.*, *id.* § 17-403.

[36]  *See, e.g.*, *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 357 (Del. 2013) (noting that the general partner owned 0.3% of the relevant limited partnership); *Allen v. El Paso Pipeline GP Co.*, 90 A.3d 1097, 1099 (Del. Ch. 2014) ("Consistent with the typical [master limited partnership] structure . . . [t]he General Partner in turn owned and continues to own a 2% general partner interest in [the relevant limited partnership]. The general partner interest provides the General Partner with a 2% economic interest in [the limited partnership], but more importantly gives the General Partner control over [it].").

[37]  Even ignoring that legal misconception, however, if Aimco OP conceivably could be liable under this reasoning, any affiliate of AimCo's—named or unnamed, known or unknown—also could be liable just by reason of its being an affiliated entity.  Such a result would be difficult to square with Delaware's long-standing recognition of the separate legal identity of corporate and alternative business entities.  *E.g., Feeley*, 62 A.3d at 667 ("[T]he separate legal existence of juridical entities is fundamental to Delaware law."); *Stauffer v. Standard Brands Inc.*, 178 A.2d 311, 316 (Del. Ch.) ("In the absence of fraud, the separate entity of a corporation is to be recognized."), *aff'd*, 187 A.2d 78 (Del. 1962).

[38]  PAB 17–21.

be an extension of Plaintiffs' erroneous attempt to equate the status of Aimco OP to that of a controlling stockholder in the corporate context.[39] As with the suggestion about AimCo's majority ownership of the limited partner units in the LP Defendants, this argument, too, is unpersuasive because of the differences between corporations and limited partnerships. To determine whether Aimco OP conceivably could owe any fiduciary duties to Plaintiffs, this Court would need to look to the terms of the limited partnership agreements of the LP Defendants and to DRULPA. There is no allegation in the Complaint that AimCo or Aimco OP is a general partner under those agreements, or that they have acted in a way that would subject them to liability as though they were general partners.[40]

Even if the cases dealing with corporate controllers were relevant, however, the cases examining the concept of "control" show that "a large blockholder will not be considered a controlling stockholder unless they actually control the board's decisions about the challenged transaction."[41] I note again that Aimco OP is not alleged to have

---

[39] *See, e.g.*, *In re Crimson Exploration Inc. S'holder Litig.*, 2014 WL 5449419, at *10 (Del. Ch. Oct. 24, 2014) ("Not surprisingly, Delaware law treats a majority stockholder as a controlling stockholder. Exceeding the 50% mark, however, is only one method of determining whether a stockholder controls the company. A stockholder who 'exercises control over the business affairs of the corporation' also qualifies as a controller.") (quoting *Lynch Commc'n Sys., Inc.,* 638 A.2d at 1113–14).

[40] *See* 6 *Del. C.* § 17-303 ("A limited partner is not liable for the obligations of a limited partnership unless he or she is also a general partner or, in addition to the exercise of the rights and powers of a limited partner, he or she participates in the control of the business.").

[41] *Crimson*, 2014 WL 5449419, at *12 (collecting cases).

been a large blockholder in the LP Defendants. Even if it were, however, the factual allegations Plaintiffs cite as evidence of Aimco OP exercising "control," even viewed in the light most favorable to Plaintiffs, suggest that while Aimco OP may have been involved in the day-to-day, operational management of AimCo's business, it did not "control" the LP Defendants in the sense that it exercised ultimate decision-making power with respect to partnership policy in general or with respect to the Mergers in particular. "The bare conclusory allegation that a [defendant] possessed control is insufficient. Rather, the Complaint must contain well-pled facts" showing that the alleged controller "exercised actual domination and control" over the subject entity or its directors—in this case, the LP Defendants.[42]

Indeed, by naming the managing general partners of the LP Defendants (ARC, FCMC, and ConCap) as Defendants themselves, as well as the directors of those entities (Bezzant and Cordes), the Complaint implicitly recognizes that the LP Defendants had alleged "controllers" as that term is understood in our law, and that Aimco OP is not among them. In that regard, Plaintiffs' reliance on cases like *Feeley v. NHAOCG* and *Cargill Inc. v. JWH Special Circumstances* is misplaced. In the *Feeley* case, AK-Feel was the managing member of the relevant subject entity, Oculus. Both AK-Feel and Oculus were LLCs. AK-Feel's own managing member was an individual named Feeley. The Court found that he could be held accountable for breaches of fiduciary duty pled

---

[42] *In re Morton's Rest. Gp., Inc. S'holders Litig.*, 74 A.3d 656, 664–65 (Del. Ch. 2013) (internal quotation marks omitted).

15

against him by the members of the Oculus LLC other than AK-Feel.[43]  In reaching that conclusion, the court in *Feeley* did not disregard the principles of corporate separateness and limited liability, but rather applied *USACafes* in a limited way to find that the "human controllers of an entity fiduciary" owed, at a minimum, a duty of loyalty to the subject entity as to transactions involving the entity's property.[44]

Here, the relevant "subject entities" are the LP Defendants, in which Plaintiffs held limited partner units.  The LP Defendants' managing general partners, the GP Defendants, are in the analogous position of AK-Feel in *Feeley*.  This case's analog to the individual defendant Feeley is not Aimco OP, but rather the officers and directors of the GP Defendants, including Defendants Bezzant and Cordes.[45]  This Court would have to go materially beyond *Feeley* and *USACafes*, therefore, to find that Aimco OP conceivably owed a fiduciary duty to Plaintiffs and could be liable for a breach thereof. The Complaint does not contain sufficient non-conclusory factual allegations about

---

[43]     *Feeley*, 62 A.3d at 671 ("Feeley therefore can be reached and potentially held liable for breach of fiduciary duty in his capacity as the controller of AK–Feel.")

[44]     *Feeley*, 62 A.3d at 670.

[45]     I note that with respect to Bezzant and Cordes, Plaintiffs assert in their briefing that the "executive officers and directors of the managing general partners of the Limited Partnerships also serve as the executive officers and directors of AIMCO-GP, which is Aimco OP's general partner." PAB 19.  This argument, too, is unavailing.  First, those allegations do not appear in the Complaint.  And, second, "our corporation law is largely built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control." *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006).

16

Aimco OP's "control" of the LP Defendants or of their respective GP Defendants to justify extending those cases in this manner.[46]

For all of these reasons, I conclude that it is not reasonably conceivable, based on the allegations in the Complaint and the limited record currently before me, that Aimco OP could be liable to Plaintiffs for a breach of fiduciary duty. I therefore will dismiss the Complaint with prejudice as it relates to Aimco OP for failure to state a claim.

### 2. Considine did not owe fiduciary duties to the LP Defendants or to Plaintiffs

The arguments and reasoning that apply to Aimco OP apply with even greater force to Considine. He is at least another level—or, possibly, several levels—more removed from the LP Defendants in the AimCo business structure than Aimco OP appears to be. The factual allegations in the Complaint regarding Considine do not create a reasonable inference that he occupied a position of control in the LP Defendants, or that he personally exercised control over them in any way. The non-conclusory allegations about Considine are that he was CEO and Board Chairman of AimCo, and President of the general partners of the entities into which the LP Defendants were merged in the

---

[46] *Cargill Inc. v. JWH Special Circumstances*, 959 A.2d 1096 (Del. Ch. 2008), is similarly distinguishable. There, this Court concluded that, "Based on the extension of fiduciary duties to those who control fiduciaries in the *USACafes* line of cases, Cargill and CIS [the "upstream" corporate entities] *may* owe fiduciary duties in the same way as the upstream entities in those cases, depending on the nature of the [relevant] Transaction and the kind of control and the degree of participation the [upstream Cargill entities] had in [the subject entity's] decision to consent to" the challenged transaction. *Id*. at 1120. Because the complaint there sufficiently pled non-conclusory facts that supported a reasonable inference that the Cargill entities "exercised control" over the subject entity and its assets "to facilitate the consummation" of the challenged transaction, the Court found that a fiduciary duty conceivably could be owed under the *USACafes* line of cases. *Id*. at 1122.

17

Mergers at issue.[47]  The Complaint also includes various statements Considine made in the context of communicating with the public on behalf of AimCo.[48]  None of these allegations, however, support a reasonable inference that Considine exercised "control" over the LP Defendants or their respective GP Defendants.  For the same reasons as I discussed as to Aimco OP, therefore, Plaintiffs have failed to state a claim for breach of fiduciary duty against Considine, and I will dismiss the Complaint with prejudice as it relates to him.

## IV.    CONCLUSION

For the reasons stated in this Memorandum Opinion, I hereby grant the ConCap Defendants' motion to the extent that the Complaint is stayed in favor of arbitration as it relates to ConCap, CCIP/3, and CCP IV, and to Bezzant insofar as his role in those entities is concerned.  Aimco OP and Considine's motion to dismiss the claims against them under Rule 12(b)(6) is granted, and those claims are dismissed with prejudice.

**IT IS SO ORDERED.**

---

[47]    Compl. ¶ 14.

[48]    Compl. ¶¶ 30-35.

18